HARRY L. JONES, Claimant and Respondent, *v.* LYMAN
H. CLARIDGE, Employer, Glacier General Assurance Co.,
Defendant and Appellant.

No. 10850.
Submitted March 8, 1965. Decided April 14, 1965.
400 P.2d 888.

Erwin L. Anzjon (argued), Missoula, for appellant.

Roger G. Baldwin (argued), Kalispell, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order of the district court, which order was made on an appeal from an order of the Industrial Accident Board after a petition for rehearing had been denied. The order of the district court was made after findings of fact and conclusions of law had been made. The order of the district court affirmed largely the findings and conclusions of the Industrial Accident Board.

The claimant was injured on May 22, 1962. He was married and had one minor child. He was a sawyer on a piecework basis. The claimant was operating a chain saw which was accidentally thrown against his arm, resulting in a severe laceration of the left forearm severing tendons, nerves and arteries. Following the accident he was under medical treatment and remained temporarily totally disabled until July 12, 1962, at which time he returned to work at reduced income.

On November 6, 1962, he returned to full employment. Medical reports indicate that claimant suffers a permanent partial impairment and disability, estimated from 20 percent compared to amputation of the hand to 50 percent compared to loss of the arm.

Based upon these facts the Board and the district court concluded that the claimant was entitled to compensation for temporary total disability from the date of the injury on May 22, 1962, to July 12, 1962; and temporary partial disability

from July 12, 1962, until November 6, 1962, at the rate of $36 per week. This sum had been paid.

The Board and court then found that until such time as an accurate evaluation could be made, a 20 percent loss of function compared with amputation of the left hand under R.C.M. 1947, § 92-709, was proper.

Based upon this evaluation an additional award of $36 per week for 40 weeks (20 percent of 200 weeks) was made, subject to reopening at any time within four years.

The district court filed a memorandum opinion which stated in part:

"The specific injury statute (section 92-709, R.C.M.1947, as amended) is construed as applying to awards for residual injuries only and is in addition to awards for temporary disability. Stated another way, a claimant is entitled to an award for temporary disability (total or partial) during the healing period plus an indemnity award under section 92-709 covering any permanent residual based on loss of use or loss of function of the specific members unrelated to loss of earnings or earning power."

"* * * The award for the residual, however, must not exceed the maximums under section 92-709."

Appellant specifies two alleged errors:

(1) Error in allowing any compensation from any date other than that of the injury;

(2) In allowing both temporary total and temporary partial disability for an injury to a specific member of the body, i.e., the arm and hand.

We shall consider the second alleged error first. Stated another way by appellant the percentage of disability to a member ultimately found places *the* limit, both as to amount and duration, and cannot be in addition to a healing period. Applied here, appellant argues that 20 percent permanent partial disability of the hand establishes 40 weeks maximum duration at the rate established under R.C.M.1947, § 92-709. Under sec-

tion 92-709, the loss of a hand has a period of 200 weeks duration.

The pertinent part of section 92-709 reads as follows:

"In case of the following specified injuries, *the compensation in lieu of any other compensation provided by this act, shall be as follows:* * * * and shall be paid for the following periods: [Emphasis supplied.]

"For loss of: * * *

"One hand ................................................................200 weeks

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Total loss of use: Indemnity benefits for permanent total loss of use of a member shall be the same as for loss of the member.

"Partial loss or partial loss of use: Indemnity benefits for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member. * * *"

Section 92-701, provides for temporary total disability.

Section 92-702 provides for disability, permanent in character.

Section 92-703 provides for partial disability. The 1957 amendment added two provisions pertinent here. One limitation as follows: "not exceeding however, the maximum compensation allowed in cases of total disability, and not exceeding *in amount or duration* the total compensation provided in the act for the total loss of the member causing such partial disability." That underlined was added by the 1957 Legislature.

Then, another limitation, wholly new, appears in the same paragraph, as follows: "provided, however, that compensation for partial disability resulting from the loss of or injury to any member shall not be payable for a greater number of weeks than is specified in section 92-709 for the loss of such member."

Prior to 1957, section 92-709 contained only the provision underlined above with the language "in lieu of any other compensation." It did not contain any of the provisions now ap-

pearing as "Total loss of use" or "Partial loss or partial loss of use." These provisions were added. These provisions both use the term "Indemnity benefits."

At the same time, the Thirty-fifth Legislative Assembly in 1957, amended section 92-703 by adding the two provisos quoted above.

We observe that, strictly and literally construed, section 92-709 could be held to mean that an injury which finally results in only a minimal, say 5 percent permanent disability, could only receive a maximum benefit of 5 percent of the amount and duration, even though the injured claimant might be unable to work for a long period of time because he was temporarily totally injured or had temporary partial injuries. Such a holding would of course conflict with the declared construction of the Act as "liberal" contained in the Act itself. (See section 92-838.)

To construe section 92-709 and 92-703, in this manner, additionally however, would require us to ignore the use of the descriptive terms contained in section 92-709 as "indemnity benefits."

To determine what the Legislature intended by use of the term "indemnity benefits" we consider this court's opinion in Spieth v. Stuart, 130 Mont. 216, 217, 218, 299 P.2d 106. Justice Angstman in that case considered the difference between section 92-703 and 92-709 so far as they differ on their foundation purpose. He pointed out that section 92-703 bases the weekly compensation on wage loss and number of dependents. Whereas section 92-709 awards compensation irregardless of earnings. In other words, section 92-709 is in its nature indemnity benefits for possible loss of earning capacity in the future, whereas section 92-703 is compensation in lieu of wages.

Thus the words "indemnity benefits" coupled with a "proportionate loss" anticipate estimated loss of future earning capacity irrespective of loss of wages and economic deprivation suffered by claimant and his dependents during the healing

period. Viewed in this light, we reject a strict and literal interpretation of the provisos contained in section 92-709.

We are aware that the amendments of 1957 were, in part, an answer to the opinion in Spieth v. Stuart, supra. In Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 P. 880, under the old law this court held that there was no "healing period" when there was an immediate amputation. In Rom v. Republic Coal Co., 94 Mont. 250, 256, 22 P.2d 161, this court indicated that section 92-709 was exclusive.

In the Spieth case, supra, this court overruled Novak v. Industrial Accident Board, 73 Mont. 196, 235 P. 754, and termed dictum the holding in the Dosen case.

In Spieth v. Stuart, supra, the case involved a crushing injury to the thumb. The Board had found the injury to be permanent, partial in character, but that the specific injury statute limited the compensation to thirty-seven weeks. The district court found that the duration should be the maximum 500 weeks under section 92-703, and this court affirmed, holding that a claimant could elect whether to come under section 92-703 or 92-709. That opinion was rendered on June 27, 1956, and in the 1957 Legislature both sections were amended as before set forth, it being clear that the Legislature intended to restrict the holding in the Spieth case.

However, as we have related hereinbefore, the restrictions, reasonably and liberally construed, are such that we may now have, under a given set of circumstances, an award for temporary total disability payments during the period wherein the claimant is entirely disabled; an award of temporary partial disability payments while his injury is still healing and he is partially able to earn wages; and an additional award (indemnity benefits) for loss of prospective future earnings as the result of permanent partial disability under section 92-709. All of these, of course, are subject to the maximum allowed under section 92-709. The district court here was correct.

■ Returning now to the first proposition, appellant's contention that the period of forty weeks for permanent partial disability can only date from the date of injury: we believe our reasoning heretofore indicates otherwise. The indemnity benefits accrue from the date the finder of fact determines as being the end of the healing period or more aptly put, at the time the permanent nature of the disability becomes established. Appellant argues that this date, then, could depend on the date of examination, and that that would fluctuate according to the whim of the claimant or the doctor examining. True, this might be a difficult date to pinpoint in all cases, but we believe generally it can be ascertained with some degree of fairness to both the claimant and the employer or carrier. In the instant case, the date is certain, that is, the determination was made and found to be the date of the examination, November 6, 1962.

For the foregoing reasons, the order of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, JOHN CONWAY HARRISON and ADAIR concur.