WILLIAM G. WALKER, Claimant and Appellant, v. H.F. JOHN-
SON, INC., Employer and TRUCK INSURANCE EXCHANGE,
Defendant and Respondent.

No. 14178.
Submitted Sept. 18, 1978.
Decided Nov. 14, 1978.
Rehearing Denied March 15, 1979.
591 P.2d 181.

Berg, Angel, Andriolo & Morgan, Ben Berg, argued, Bozeman, for claimant and appellant.

Lyman H. Bennett, III, argued, Bozeman, for defendant and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

This is an appeal from an adverse judgment and denial of a rehearing by the Workers' Compensation Court, Bozeman Area, County of Gallatin.

Claimant is a 32 year old history and political science teacher at Bozeman Senior High School. During the years 1973 until 1976 claimant also received income from athletic coaching at school and summer employment as a truck driver. On July 9, 1976, he was injured in a collision while in the course of his truck driving duties for defendant, H. F. Johnson, Inc. Claimant suffered a compression fracture of the first lumbar vertebrae of his spine. All medical costs ($1,355.56 and temporary total disability payments

($2,754) were paid until around the beginning of November, 1976, when the carrier was advised by Dr. Schumacher that claimant "had progressed as far as the permanent nature of his injuries would permit." Dr. Schumacher, the examining physician, testified that claimant was permanently disabled from driving trucks, manual labor or any work requiring prolonged standing or sitting. At defendant's request, another physician, Dr. Davidson, examined claimant on May 10, 1977, and characterized his prognosis as "good" and at present claimant has approximately 15 percent permanent partial impairment of the lumbar spine as compared to the body as a whole.

Claimant returned to teaching in September, 1976, but did not seek outside work at all during the summer of 1977.

At the hearing, Darlene Walls, interviewer for the Montana State Employment Service in Bozeman, testified that employment of a person with claimant's qualifications and of his age and disabilities was "rather limited with those restrictions". She estimated that, given those restrictions, a person could earn "somewhat in the area of $2.50 to $2.75" per hour. She also testified there were no job openings for teachers during the summer months in either the public school system or at Montana State University.

In the school years 1977-78, claimant received a raise in his total school salary to $16,290. The raise was part of a general wage increase received by all teachers at the Bozeman Senior High School.

In determining claimant's earning capacity, the Workers' Compensation Court found his gross income, including wages received for coaching and summer salary as a truck driver, for the fiscal years of 1973-1975 to be:

| 1973 | $14,126 [sic] | ) | |
| 1974 | $14,313 | ) | average $14,803 |
| 1975 | $15,972 | ) | |

Claimant's salary for the school year 1976-77 was found to be $14,832. The court concluded claimant's 1976 (post-injury) school salary was in excess of the average gross income for the years 1973, 1974 and 1975. Similarly, the court looked at claimant's salary for

the school year 1977-78 ($16,290) and found it in excess of claimant's gross income for the prior years. The court ultimately concluded "[t]hat a preponderance of evidence reveals that the claimant has *not* lost any earnings or earning capacity *measured in dollars* by reason of his injury, but is in fact earning more annually than he was at the time of his injury." Thus, compensation benefits under section 92-703.1, R.C.M.1947, were denied as were costs and attorney fees under section 92-618, R.C.M.1947. However, indemnity benefits under section 92-709.2, R.C.M.1947, totalling $6.075 were allowed. Claimant appeals and presents the following issues for review on appeal:

1. Whether there was substantial evidence to support the Workers' Compensation Court's finding that claimant was not entitled to receive benefits under section 92-703.1, R.C.M.1947.

2. Whether the Workers' Compensation Court erred in denying benefits under section 92-703.1, R.C.M.1947, based on post-injury wages.

3. Whether claimant is entitled to recover attorney fees under section 92-618, R.C.M.1947.

In Issue No. 1 claimant contends that if he must seek employment to establish "actual diminution of earning capacity" under section 92-703.1, according to *McAlear v. McKee* (1976), 171 Mont. 462, 558 P.2d 1134, the test has been met by evidence presented through Darlene Walls' testimony showing the wage scale of a person in claimant's situation during the pertinent period in Bozeman. Failure to seek employment is not necessarily synonymous with "inability to obtain employment". Because of his injuries, claimant is unable to obtain employment in areas related to his employment before the accident (truck driving and jobs requiring heavy manual labor or prolonged sitting or standing). The court should have determined claimant's diminished earning capacity as the difference between his actual earnings before the injury and the amount he could have earned after.

Respondent contends there was substantial evidence to support the finding that claimant is not entitled to receive compensation

benefits under section 92-703.1 Distinction between the remedies provided by section 92-703.1 and 92-709, R.C.M.1947, are based on different standards—prospective *possible* loss (section 92-709) and *actual* loss of earning capacity (section 92-703.1). Remedy under 92-703.1 includes the burden of showing actual loss due to injuries. *McAlear v. McKee, supra.* Claimant has failed to establish the loss by: (1) failure to seek employment; (2) not presenting evidence other than "availability" of jobs in the local area; (3) claiming for loss in earning capacity in manual labor fields when not disabled in others; and (4) actual earnings, since post-injury earnings are greater than pre-injury earnings.

In Issue No. 2 claimant contends Finding of Fact No. 27 and Conclusion of Law No. 3 are error because they deny benefits under section 92-703.1. The increase in claimant's school salary was based on a general increase in wages for all teachers at the Bozeman Senior High School. The real test is the diminished earning capacity of the claimant. *Fermo v. Superline Products* (1978), 175 Mont. 245, 574 P.2d 251.

The fact that the claimant had worked two jobs before the accident should not weigh against him. 2 Larson, Workmen's Compensation § 60.31, § 60.33. Rather, school earnings should be discounted, coaching and pre-injury summer earnings combined and weekly wage thus calculated for pre-injury and post-injury. Diminished earning capacity then equals $48.29 of which 66⅔ percent is $31.87 times 500 weeks equals $15,935 to which claimant is entitled under section 92-703.1, R.C.M.1947.

Respondent contends, assuming arguendo, claimant is entitled to compensation pursuant to section 92-703.1, the duration of such benefits should not continue for a full 500 weeks. Sections 92-703-.1(2) and 92-709 contain provisos limiting the duration of benefits to that prescribed in section 92-709. Therefore, two methods for calculating duration of benefits exist, comparison of: (1) enumerated and nonenumerated injuries, or (2) nonenumerated injuries and maximum duration (500 weeks). (1) Using algebraic formula comparing time allotted for loss of arm at the shoulder (280 weeks) at

impairment rating 60 percent with Dr. Davidson's impairment rating of claimant at 15 percent; claimant would be entitled to 70 weeks maximum duration (or total of $2,230.90). (2)By merely multiplying Dr. Davidson's disability rating of claimant at 15 percent by the maximum of 500 weeks, 75 weeks of benefits would be the maximum to which he is entitled (or total of $2,390.25).

Finally, claimant contends that since the amount of the award will exceed that offered by the insured, section 92-618, R.C.M. 1947, entitles claimant to an award of reasonable attorney fees.

Respondent maintains that since claimant is not entitled to more than was offered by the carrier in full settlement, section 92-618 does not apply and no attorney fees should be awarded.

■ This Court's scope of review is limited to whether there was substantial evidence to support the findings and conclusions of the Workers' Compensation Court. *Jensen v. Zook Brothers Construction Company (Argonaut Inc. Co.)* (1978), 178 Mont. 59, 582 P.2d 1191, 1193. The issue on appeal have accordingly been reframed. Respondent (employer and carrier) base their arguments upon *McAlear v. McKee, supra.* In *McAlear*, this Court held where the only reason for claimant's unemployment during the period section 92-703.1 benefits were sought was the unavailability of work, claimant was not entitled to such benefits having failed to show inability to obtain employment due to injuries. *McAlear*, 558 P.2d at 1137-38. Acknowledging the distinction between section 92-703.1 and section 92-709 benefits (that 92-703.1 bases benefits upon *actual* loss of earning capacity while section 92-709 is based on *possible* prospective loss of earning capacity), the Court found claimant failed to fulfill the burden of proof implicit in section 92-703.1, i.e., actual diminishment of earning capacity. Claimant here urges that such burden was met by Darlene Walls' testimony which provided a basis for determining diminished earning capacity.

This Court seemingly lightened the burden of a claimant seeking section 92-703.1 benefits in *Fermo v. Superline Products, supra.* In

line with the policy to liberally construe the Workers' Compensation Act in favor of the injured worker, the Court stated:

"Here there seems to be a loss of capacity to perform as well as before the injury, and a loss of ability to complete and earn in the open market. This qualifies claimant under the standard to be applied when determining his right to be paid under section 92-703.1 for diminished earning capacity." 574 P.2d at 254.

Respondent contends that in *Fermo*, this Court confused the distinction between section 92-709 and section 92-703.1 as set out in *McAlear*. While these cases are in conflict on that point, *Fermo* seems a better reasoned, more equitably balanced decision.

The case upon which *McAlear* relied in making the distinction was *Jones v. Claridge* (1965), 145 Mont. 326, 400 P.2d 888. In *Jones* this Court construed section 92-703, R.C.M.1947, which was repealed in 1973. The language of that statute, ". . . the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter . . ." admitted no room for interpretation either there or in *Olson v. Manion's Inc.* (1973), 162 Mont. 197, 202, 510 P.2d 6, 9. However, the language of section 92-703.1, ". . . actual diminution in the worker's earning capacity measured in dollars . . ." is substantially different, leaving no room for interpretation consistent with the policy to liberally construe the act in favor of the claimant. *Jensen v. Zook Brothers*, *supra*, 582 P.2d at 1195, and cases cited therein.

This Court has continuously maintained that an election exists between the awards (29-709 and 92-703.1) even though an injury falls within a specific provision of 92-709. *Jensen*, 582 P.2d at 1195, 35 St.Rep. at 1071. It seems unjust to deny such election where the injury was not among those listed in 92-709 simply because claimant failed to seek supplementary employment. The standard of qualification for 92-703.1 benefits announced in *Fermo* has been satisfied. A method for measuring diminished earning capacity exists in Darlene Walls' testimony.

Issue No. 2 is closely related to Issue No. 1. *Fermo v. Super-*

*line Products, supra. sets out factors by which post-injury earnings must be discounted to fairly evaluate if and by how much claim-ant's earning capacity has dimished under section 92-703.1. 574 P.2d at 253, 35 St.Rep. at 24. Nothing in the record indicates that such discounting was undertaken. Perusal of the Findings of Fact Nos. 11 through 18 and No. 27 and Conclusion of Law No. 3 sug-gests that no discounting was conducted. Significantly, the figure used for post-injury earnings as compared to pre-injury earnings was claimant's 1976-77 and 1977-78 school year salaries* rather than his gross income (as averaged) for the *full years* of 1973, 1974 and 1975. The inaccuracy of the court's Conclusion of Law No. 3 thus presents itself.

Rather than respond to the claimant's second issue, respondent seized the opportunity to address arguendo the question of dura-tion of benefits, assuming section 92-703.1 benefits were available. Here, respondent does violence to his argument under Issue No. 1 that section 92-703.1 is to be distinguished from 92-709 in that sec-tion 92-709 is intended to compensate *possible* prospective loss while 92-703.1 is intended to compensate *actual* diminished earn-ing capacity. By that theory, section 92-703.1 benefits would logically continue as long as actual diminished earning capacity could be demonstrated, subject to the 500-week maximum. In con-trast, section 92-709 benefits, being based on possible prospective loss, would be limited in duration as therein prescribed. In short, respondent's arguments are logically inconsistent quite apart from the arguendo aspect.

The provisos contained in sections 92-703.1 and 92-709 referred to by respondent are quoted in pertinent part below:

". . . provided, however, that compensation for partial disability resulting from the loss of or injury to any member shall not be pay-able for a greater number of weeks than is specified in section 92-709 for the loss of the member." Section 92-703.1(2), R.C.M. 1947.

". . . In all other cases of permanent injury, *less than total*, not in-cluded in the above schedule, the compensation for partial disabil-

ity shall bear such relation to the periods stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule or to partial disability (500 weeks)." Section 92-709, R.C.M. 1947. (Emphasis added).

The duration limitation imposed by section 92-703.1(2) by its terms applies only to injuries among those listed on the 92-709 schedule. Claimant's injury is not listed and therefore, the limitation does not apply to him. The duration limitation imposed by section 92-709, by its terms, applies to injuries not on the schedule and "less than total". Claimant's injury here cannot readily be characterized as such. If the right to elect between sections 92-709 and 92-703.1 is to remain intact, a claimant whose injury was less than total and not among those listed in section 92-709 could avoid the durational limitations recited in section 92-709 by simply electing to recover under section 92-703.1 See *Jones v. Claridge, supra.* Still, the award should not automatically run for the full 500 weeks especially in light of conflicting prognoses of Dr. Schumacher and Dr. Davidson. Perhaps jurisdiction should be retained after the award.

The Workers' Compensation Court could resolve the duration problem by monitoring changes in claimant's earning capacity. See *Rounshaugen v. Ramsey Engineering Co.* (1975), 166 Mont. 214, 531 P.2d 1348. See also *Hutchinson v. General Host Corp.* (1978), 178 Mont. 81, 582 P.2d 1203, 1208, on the duration of back injury.

The finding that claimant is entitled to section 92-703.1 benefits triggers section 92-618, entitling claimant to ". . . a reasonable attorney's fee as established by the division of workmen's compensation judge . . ." assuming the award utimately exceeds $6,075 already offered in settlement.

The findings of the Workers' Compensation Court's conclusion that he is not entitled to benefits under section 92-703.1 is not supported by substantial evidence. The standards declared in *Fermo v. Superline Products, supra,* have been met by the claimant.

The judgment of the Workers' Compensation Court is reversed and the cause remanded for findings consistent with this opinion.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.