No. 80-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

E. L. McDANOLD,

Claimant and Appellant,

vs.

B. N. TRANSPORT INC., Employer,

and

B. N. TRANSPORT, INC.,

Defendant and Respondent.

_____

Appeal from:  Workers' Compensation Court
              Honorable William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        William T. Kelly, Billings, Montana
        Victor R. Halverson, Jr. argued, Billings, Montana
        Gene Picotte argued, Helena, Montana

    For Respondent:

        Utick and Grosfield, Helena, Montana
        Andrew Utick argued, Helena, Montana
        Gary Peterson, Billings, Montana

_____

Submitted: April 24, 1981

Decided: September 3, 1981

Filed: **SEP - 3 1981**

*Thomas J. Kearney*
_____
                    Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant, E.L. McDanold, appeals from an order denying his petition for rehearing, entered in the Workers' Compensation Court in and for the area of Billings, the Honorable William E. Hunt, presiding. The court previously had entered judgment against the claimant upon his original petition for hearing on June 10, 1980. The judgment was based on the court's conclusions that the claimant had been paid benefits in excess of the proper amount, that he is not entitled to further benefits, and, that he is not entitled to receive costs or attorney fees under section 39-71-611, MCA. The claimant was not required to refund any of the excess benefits.

We reverse the lower court's judgment that the claimant has been paid excessive benefits and is not entitled to further benefits. We remand the case for further proceedings.

The following issues are dispositive:

1. Whether the durational limits on workers' compensation benefits imposed by former section 92-709, R.C.M., 1947 (the specific injury/indemnity statute), commence to run only upon claimant reaching maximum healing, and thus are in addition to all temporary total disability benefits received under former section 92-701, R.C.M., 1947.

2. Whether the claimant, after attaining maximum healing, could elect to proceed under either the specific injury "indemnity" statute (section 92-709, R.C.M., 1947), or under the "disability" statute (section 92-703, R.C.M. 1947).

3. Whether the claimant is entitled to a permanent partial disability award based upon a rating as to the whole man.

We find the Workers' Compensation Court erred in concluding that the periods of benefits prescribed by former section

92-709, R.C.M., 1947, for a specific injury limited the sum total of all benefits, including temporary total disability and permanent partial disability compensation. We hold the limitation period applied only to benefits paid under former section 92-709 or former section 92-703, R.C.M., 1947. Because of the grounds of its decision, the lower court did not make further findings necessary to decide whether the claimant is entitled to more benefits. Therefore, we must remand the case.

On June 23, 1971, while working in the course and scope of his employment with Northern Pacific Transport Company (now B.N. Transport, Inc.), claimant suffered an injury to his right ankle. The injury occurred as claimant stepped out of his transport truck and into a hole. Claimant's preinjury wage was $162.80 per week. At the time of the accident, he was married and supporting five minor children.

After his injury the claimant was treated by several doctors. The claimant underwent surgery to his ankle in January 1972 and again in January 1973. Following his injury, the claimant was unable to return to his job as a truckdriver.

Claimant was able to find only part time work at lesser hourly wages than his prior employment until April 1974, when he accepted full time work as a Montana Liquor Store clerk at an hourly wage of $2.83. Claimant continues to have problems stemming from his ankle injury which limit him to store clerk duties at the liquor store.

Claimant was placed on temporary total disability by B.N. Transport, Inc. (a self-insurer) immediately following the injury. The claimant was compensated on that basis, under former section 92-701, R.C.M., 1947, from June 24, 1971, to April 11, 1974--a period of 146 weeks.

-3-

Claimant was placed on permanent partial disability on April 12, 1974. He was compensated on that basis for a period of 76 weeks, until September 25, 1975.

On September 25, 1975, claimant's benefits were terminated by B.N. Transport, Inc. pursuant to an opinion rendered by the Workers' Compensation Division Bureau Chief that due to the nature of the claimant's injury, maximum benefits were limited to 180 weeks by section 92-709. In light of the fact that B.N. Transport had paid benefits under both temporary total and permanent partial compensation plans for 222 weeks, the Bureau Chief concluded that the employer had exceeded compensation requirements.

In April 1979, claimant McDanold petitioned the Workers' Compensation Court for an order which would require the employer to continue paying benefits for the injury to his right ankle. In October 1979, a pretrial conference was held resulting in a pretrial order being issued. Trial was held in November 1979.

Following trial, the Workers' Compensation Court concluded that the claimant was entitled to a maximum of 180 weeks of benefits including both temporary total disability benefits and permanent partial disability benefits. The court further concluded that the claimant's employer had met and exceeded its statutory liability for benefits. The court's findings, conclusions, and judgment denying further benefits were entered on June 10, 1980. Claimant filed a petition for rehearing, which was denied by order on July 22, 1980, and claimant appeals from this order.

B.N. Transport contends that claimant has not proceeded in a timely manner in raising the issue that benefits paid for the period of temporary total disability are separate

from and not included in the period of benefits prescribed by the specific injury statute. B.N. argues that such theory was not included in the pretrial order which took the place of claimant's pleading, was not included in the claimant's proposed findings and conclusions, and was only raised in the claimant's post-trial briefs. The trial court required the submission of briefs by both claimant and B.N. prior to the making of its decision. In such briefs, claimant set forth his contentions and legal authorities on the question of the separation of the periods of temporary total disability from benefits under the specific injury statute. We have held that issues not raised at the trial level before the Workers' Compensation Court will not be reviewed on appeal. Greger v. United Prestress, Inc. (1979), ___Mont.___, 590 P.2d 1121, 1126, 36 St.Rep. 268, 275. We find that this issue of law was properly raised before the Workers' Compensation Court prior to the entry of its findings, conclusions and judgment, and that the respondent did have the chance to be heard on the issue; therefore, the issue is properly reviewable on this appeal.

I.

Former section 92-709, R.C.M., 1947, the specific injury statute, was amended several times after the date of the claimant's injury. On the date of the injury, June 23, 1971, the statute appeared in pertinent part as follows:

"Compensation in case of specified injuries. In case of the following specified injuries, the compensation in lieu of any other compensation provided by this act, shall be as follows . . .

". . . where the injured employee has a wife and four (4) or more children, or five (5) or more children residing within the United States who would be entitled to compensation in case of his death, sixty-six and two-thirds per centum (66 2/3%) of the wages received at the time of the injury, subject to a maximum compensation of

-5-

sixty dollars ($60.00) per week, subject to
change when the number of beneficiaries or de-
pendents increases by birth, or decreases, and
subject in all cases to a minimum compensation of
thirty-four and 50/100 dollars ($34.50) per week,
and shall be paid for the following periods:

"For loss of: . . . .

"One foot at the ankle . . . 180 weeks . . .

"Partial loss or partial loss of use: Indemnity
benefits for permanent partial loss or loss of
use of a member may be for proportionate loss or
loss of use of the member. . . "

We note that the 1971 legislature amended section 92-

709, which amendments became effective on July 1, 1971,

eight days after claimant's injury. Chapter 140, Laws of

Montana (1971). As amended, the statute read in pertinent

part as follows:

"Compensation in case of specified injuries. In
case of the following specified injuries, compen-
sation for temporary total disability shall be
paid at the weekly rate providd [sic] in section
92-701, R.C.M., 1947, during the healing period,
but in no event shall the healing period exceed
twenty-six (26) weeks. In addition thereto but in
lieu of any other compensation provided by this act
shall be as follows: the compensation shall be
paid at the weekly rate provided in section 92-703,
R.C.M., 1947, and shall be paid for the following
periods . . ."

Thus, a healing period was specifically "tacked on" to the

indemnity benefits period beginning in July 1971, but was

limited to 26 weeks.

The statute was again amended in 1973 to read as follows:

"Compensation in case of specified injuries. In
case of the following specified injuries, compensa-
tion for temporary total disability shall be paid at
the weekly rate provided in section 92-701.1, during
the healing period, but in no event shall the healing
period for loss of a member exceed twenty-six (26)
weeks. In addition thereto but in lieu of any other
compensation provided by this act, compensation for
loss of a member shall be paid at the weekly rate
provided in section 92-703.1, and shall be paid for the
following periods:

"For loss of: . . . .

"One foot at the ankle . . . 180 weeks . . .

-6-

"In all cases of permanent injury to a member less than loss of the member compensation shall be paid for total temporary disability, without limitation as to time under section 92-701.1. In addition thereto, indemnity benefits for permanent disability to a member or members shall be proportionate to loss or loss of use of the member or members at the weekly rate provided in section 92-703.1. . ."
(Chapter 204, Laws of Montana (1973))

In 1973 the legislature provided an unlimited period of benefits for partial loss of a member during healing, the benefit period prescribed under section 92-709 to begin only after healing had ended.

The statute was again amended in 1975 (Ch. 386, Laws of Montana (1975)), which amended version now is in effect:

"Compensation in case of specified injuries. (1) In addition to temporary total disability benefits allowed in this act, indemnity benefits for loss of a member shall be paid at the weekly rate provided in section 92-703.1 and shall be paid for the following periods: . . ." (Former section 92-709, R.C.M. 1947, now section 39-71-705, MCA.)

We have reviewed the legislative history of section 92-709, R.C.M., 1947, in order to eliminate potential confusion because of the numerous amendments. This legislative history shows the development by the legislature of the statutory concept that compensation for temporary disability benefits are to be allowed in addition to indemnity benefits for loss of a member. We conclude that section 92-709, R.C.M., 1947, as in effect on June 23, 1971, must be construed in a similar manner.

In Jones v. Claridge (1965), 145 Mont. 326, 400 P.2d 888, this Court quoted from the memorandum opinion of the District Court as follows:

"'The specific injury statute (section 92-709, R.C.M. 1947, as amended) is construed as applying to awards for residual injuries only and is in addition to awards for temporary disability. Stated another way, a claimant is entitled to an award for temporary disability (total or partial) during

-7-

the healing period plus an indemnity award under
section 92-709 covering any permanent residual
based on loss of use or loss of function of the
specific members unrelated to loss of earnings or
earning power.'

"'. . . The award for the residual, however, must
not exceed the maximums under section 92-709.'"
145 Mont. 328, 400 P.2d 889.

No issue was raised in the Jones case as to the "tacking on"
of the periods under the temporary and residual awards. The
lower court decision was affirmed.

Construing the section liberally in favor of the injured
workman as required under former section 92-883, R.C.M.,
1947, now section 39-71-104, MCA, we hold that the period
during which claimant received temporary total disability
benefits under former section 92-701, was separate from and
in addition to the period during which he could receive
benefits under section 92-709, the specific injury "indemnity"
statute. Therefore, the claimant here may not have exceeded
his statutory benefits, depending upon the extent of his
injury and the length of his healing period. The case must
be remanded for findings on those questions.

II.

Former section 92-703, R.C.M., 1947, allowed compensation
for loss of earning capacity, whereas section 92-709 allowed
indemnity compensation for the loss of a member or the loss
of use of a member. Section 92-703 was expressly made
subject to the time limits prescribed in section 92-709.
For loss of one foot at the ankle, section 92-709 allowed
payments for up to but not exceeding 180 weeks. It also
provided that proportionate benefits could be paid for
partial loss of use of a member. Therefore, 180 weeks is
the maximum period during which claimant could receive
benefits under either statute.

-8-

The right to elect to proceed under either section 92-703 for loss of earning capacity or section 92-709 for loss of a member was well settled. Spieth v. Stuart (1956), 130 Mont. 216, 299 P.2d 106, held that such a right of election exists, and the right has been carried down to the present day. It is true the legislature quickly amended section 92-703 to subject that statute to the periods prescribed in section 92-709. Ch. 234, Laws of Montana (1957). It is important to note, however, that the amendment did not affect the right of a claimant to elect between the statutes. Rather, it merely set the maximum period of benefits payable under section 92-703 equal to the period listed in section 92-709 for the enumerated injuries.

The distinction becomes important in this case. The claimant here may be found to have a certain percentage impairment of his foot and ankle. Under section 92-709, he would receive benefits for a period equal to that same percentage of 180 weeks. If, however, the claimant can show that he has suffered a loss of earning capacity as measured under the terms of former section 92-703, then his injury can be translated into a percentage impairment of the whole man. In that event, he could receive benefits for a period equal to the whole man percentage impairment multiplied by 500 weeks, subject to a maximum of 180 weeks. The latter period may very well be longer than the period calculated under section 92-709. Such an approach fulfills this Court's duty to both abide by the legislature's directive as to maximum benefit periods and also to liberally construe the act in favor of the injured workman.

The above example is a simplification. The claimant's percentage impairment rating is not the sole factor to be used in determining the amount of benefits he should receive;

such a rating is an expert's medical opinion and constitutes but a single item of evidence, to be considered along with other evidence presented. Jensen v. Zook Bros. Const. Co. (1978), 178 Mont. 59, 64, 582 P.2d 1191, 1194. The above example is used only to set forth the principle involved in this appeal.

Section 92-703 stated the appropriate test for determining whether a claimant had suffered any loss of earning capacity. Under the former statute, the claimant was to be paid benefits equal to a fixed percentage of the difference between the wages received at the time of injury and the wages he was able to earn after maximum healing was reached. Olson v. Manion's Inc. (1973), 162 Mont. 197, 510 P.2d 6. (See also, the explanation of Olson in Walker v. H. F. Johnson, Inc. (1978), _____ Mont. ___, 591 P.2d 181, 184, 35 St.Rep. 1667, 1671, modified on rehearing (1979), ___ Mont ____, ____ P.2d ___, 35 St.Rep. 1673A.

The lower court did not reach the issue whether claimant is entitled to receive benefits under former section 92-703, R.C.M. 1947. The case must be remanded for findings as to loss of earning capacity, if any, in order to determine whether the claimant is entitled to further benefits.

### III.

Whether the claimant is entitled to a disability rating as to the whole man depends on whether he can show loss of earning capacity in order to proceed under former section 92-703, R.C.M., 1947, as it stood on the date of injury and as it was construed by this Court.

If the Workers' Compensation Court finds that claimant has shown a requisite loss of earning capacity, then the court should proceed to determine the extent of the disability

-10-

rating of the claimant.

IV.

The case is remanded to the Worker's Compensation Court for determination of the following:

(1) The end of the claimant's healing period.

(2) Claimant's loss of earning capacity, if any, from which the court shall determine claimant's right to receive benefits under former section 92-703, R.C.M., 1947.

(3) Claimant's disability rating as to the whole man if the court determines that he may proceed under section 92-703, R.C.M., 1947.

(4) Exclusive of the healing period, the number of weeks of benefits to which the claimant is still entitled under section 92-703, or 92-709, R.C.M., 1947, whichever is applicable, subject to the maximum of 180 weeks.

(5) The claimant's costs and attorney fees pursuant to section 39-71-611, MCA, if he is found to be entitled to further benefits.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

-11-

_Daniel J. Shea_

------------------------------
Justices

Mr. Justice Frank B. Morrison, Jr., specially concurs:

I concur in the result. However, the majority opinion is vague with reference to the method to be used in calculating "loss of earning capacity". The majority notes that the claimant is to be paid benefits equal to a fixed percentage of the difference between the wages received at the time of injury and the wages the claimant was able to earn after maximum healing was reached.

In this case claimant was injured June 23, 1971, and returned to work in April of 1974. Claimant's preinjury wage was $162.80 per week. Claimant returned to work in 1974 at an hourly wage of $2.83 per hour. At forty hours per week this would equal $113.20 per week. However, it would be patently unfair to compare wages in 1974 with wages in 1971. During that three-year period of time, there was a substantial growth in wages for nearly all occupations.

The statute contemplates a comparison of preinjury and postinjury wages. However, the comparison must be made for the same period of time. The Workers' Compensation Court should consider evidence relating to what claimant would have made driving his transport truck in 1974 and compare that with the wages earned as a clerk for the Montana Liquor Store. Loss of earning capacity can only be realistically determined through such an approach.

I do not believe that the majority holds to the contrary. The issue is simply not developed. Upon remand I urge the Workers' Compensation Court to follow this approach in calculating "loss of earning capacity".

_____
Justice

-13-