No. 81-228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

JOHN C. VAN DAVEER,

Claimant and Respondent,

vs.

STAUFFER CHEMICAL COMPANY, Employer,
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, Insurer,

Defendants and Appellants.

Appeal from: Workers' Compensation Court
Honorable William Hunt, Judge presiding

Counsel of Record:

For Appellants:

James P. Harrington argued, Butte, Montana

For Respondent:

Keefer and Roybal, Billings, Montana
Neil S. Keefer argued, Billings, Montana

Submitted: June 21, 1982

Decided: September 9, 1982

Filed: SEP 9 1982

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

This appeal arises from a July 25, 1980 judgment of the Workers' Compensation Court in which John C. Van Daveer, the claimant, was awarded additional temporary total disability benefits, an indemnity award for diminished earning capacity, penalty for late payment, and attorney fees. The employer's request for rehearing was denied by order of April 16, 1981.

On September 24, 1978, Van Daveer, while working a summer job as a switchman for Stauffer Chemical Company, fell from a railroad car and was crushed between the car and a brick wall. Van Daveer sustained a collapsed lung, six fractured ribs, and numerous other internal injuries. He underwent surgery and was hospitalized in intensive care for at least a week.

After the injury, Van Daveer did not intend to return to Stauffer but rather planned to return to school to complete his degree. He discussed this intention with Dr. Bartlett, the only medical expert testifying in the case. On January 4, 1979, Dr. Bartlett released Van Daveer to resume "full, normal activities and duties."

Van Daveer returned to school in January 1979 for winter quarter and testified that he continued to suffer from extreme pain. In mid-February Van Daveer developed a hernia at the site of the original incision. Corrective surgery was performed March 23, 1979, and Bartlett again released Van Daveer for full activity as of May 1, 1979.

Van Daveer graduated from Montana State University in civil engineering in August 1979 and currently is employed

with the Montana Power Company as an engineer.

At the time of the accident, Van Daveer was paid $7.53 per hour for forty hours per week. His temporary total rate was $188 per week and his maximum permanent partial rate was $94 per week.

Van Daveer properly gave Stauffer notice of his claim and filed for compensation. National Union Fire Insurance Company accepted liability for Van Daveer's injury, paid all medical payments due, and paid weekly temporary total disability benefits through February 25, 1979. National then terminated all compensation and claimed an overpayment of $966.86 for payments made between January 3 and February 25, 1979.

National reinstituted temporary total disability payments on March 21, 1979, at the time of the hernia problem. It continued payments through May 1, 1979, deducting the claimed overpayment and making payment of $161.14 on September 28, 1979.

Van Daveer claimed he was entitled to temporary total payments from the date of his injury to August 1, 1979, and to a further "indemnity award."

The case was submitted to the Workers' Compensation Court on the pretrial order and briefs of counsel. The court concluded that Van Daveer would not have been physically fit to return to his old job with Stauffer on January 3, 1979, and that he was entitled to temporary total disability benefits from the date of injury to August 1, 1979.

The court further concluded that residual effects of Van Daveer's injury limited his ability to obtain certain

-3-

employment as an engineer in the open labor market, and, therefore, he was entitled to an "indemnity award" of 100 weeks.

The court computed temporary total compensation benefits from September 24, 1978, to August 1, 1979, at $188 per week, less the amount already paid, for a total of $4,162.86. To that figure, the court added a 20 percent penalty for delay or refusal to pay compensation which amounted to $832.57. In addition, the "indemnity award" of 100 weeks at $94 per week totaled $9,400. Each of these amounts was to be paid in a lump sum.

Stauffer and National petitioned for rehearing. The petition was denied April 16, 1981, and this appeal ensued.

Four issues are before this Court on review:

1. Whether the court's award of additional temporary total compensation benefits was supported by substantial evidence?

2. Whether the court's indemnity award was supported by substantial evidence?

3. Whether the court's imposition of a penalty was supported by substantial evidence?

4. Whether the court erred in awarding attorney fees?

ADDITIONAL BENEFITS

The first issue to be considered is whether there is substantial evidence to support the award of additional disability benefits. If there is substantial evidence to support the Workers' Compensation Court, this Court cannot overturn that decision. Holton v. Stoltze (1981), ___ Mont. ___, 637 P.2d 10, 38 St.Rep. 1835.

National argues the court's award of additional disability benefits was arbitrary and unsupported by substantial evidence. National points to the pretrial stipulation which states: "Thereafter, defendant-insurer reinstituted temporary total disability payments on March 21, 1979 when Claimant again became disabled because of a hernia problem . . ." (Emphasis added.)

National argues that this stipulation, in addition to Dr. Bartlett's full medical release of Van Daveer on January 4, 1979, precludes a finding of disability between January and March 21, 1979.

The court concluded that since a hernia is caused by exertion, if the original surgery incision was herniating from the daily activities associated with attending school, it could not have been sufficiently healed to have allowed Van Daveer to return to his job at Stauffer in January.

Dr. Bartlett testified that he knew, at the time he released Van Daveer for return to work, that Van Daveer did not intend to return to his job at Stauffer. Bartlett also stated he was not familiar with the American Medical Association Rating Guides because he did not often make those determinations and his examination of Van Daveer was of the nature of a follow-up:

> "Q. So, basically, Doctor, would it be fair to state that, really, at no time did you ever sit down with him and go through the job that he had at Stauffer and say, 'All right, you can go do this today or you can do it next week'?
>
> "A. I didn't do that and had no intention of doing that. What I mean by the physical fitness of him was he was able to perform normal activities as stated in my letter. I did not go through and do a disability examination on him. I wasn't requested to. I was giving a follow-up."

Van Daveer testified he experienced pain in his hips and chest after January 1979 which impaired his movement and would have prevented his return to work at Stauffer. He stated he believed he could not have returned to Stauffer, if he had ever intended to do so, until August 1, 1979.

We find the court's determination of temporary total disability payments due Van Daveer from the date of injury to August 1, 1979, to be supported by substantial evidence.

INDEMNITY AWARD

In his petition for a hearing Van Daveer requested an "indemnity award," but did not specify the statute under which his request was made. The Workers' Compensation Court found that he suffers from residual effects of his injury which would "limit his ability to obtain certain employment as an engineer in the open labor market" and, therefore, made an "indemnity award of 100 weeks."

This Court recently upheld a finding of 40 percent disability of the whole man by the Workers' Compensation Court. Holton v. Stoltze, supra. There, two physicians gave the claimant disability ratings--one 10 percent and the other 15 percent. The court, after considering the claimant's age, education, work experience, pain and disability, actual wage loss and loss of future earning capacity, found a 40 percent disability. Based on that determination, the court awarded claimant 200 weeks of benefits at $45 per week.

Here, the court made no finding of a percentage of disability of the whole man or of any member of the body. In fact, it did not specify any basis for its 100-week determination, nor did it specify the statute under which

-6-

the award was made. We find such an unexplained determination to be arbitrary, and we return this question to the Workers' Compensation Court for more complete findings.

PENALTY

The next issue on review is whether a 20 percent penalty for unreasonable delay authorized by section 39-71-2907, MCA, was warranted here.

National paid Van Daveer temporary total payments from the date of injury through February 25, 1979, stopping the payments after receiving Dr. Bartlett's medical release. Van Daveer's hernia surgery and subsequent recovery required additional temporary total payments. National made the payments from March 1, 1979 through May 1, 1979, when Dr. Bartlett again gave Van Daveer a medical release. Since Dr. Bartlett had originally released Van Daveer for work on January 5, 1979, National claimed an overpayment of $966.86 for payments made into February. It subtracted this overpayment from payments due from March through May and on September 28, 1979, paid Van Daveer the $161.14 remainder.

Robert W. Keene, branch manager for the General Adjustment Bureau, testified via deposition that after the September payment, Van Daveer was owed nothing further.

The court subsequently made Finding of Fact No. 20:

"The position of the insurance carrier that claimant is entitled to absolutely nothing constitutes a delay or refusal to pay compensation benefits so as to entitle claimant to a 20% penalty as provided by section 39-71-2907, MCA."

In his deposition, Keene stated that he based his position that Van Daveer was not entitled to further payments on Dr. Bartlett's medical release.

The penalty is authorized for "unreasonable delay or

refusal to pay." Section 39-71-2907, MCA. The penalty is not, however, intended to eliminate the right of an insurer to assert a legitimate defense. Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450.

Based on the facts in this case, we find the court's imposition of the 20 percent penalty unsupported by substantial evidence.

"The triggering event for the purpose of awarding penalties for unreasonable delay or refusal to pay compensation is the insurer's receipt of medical verification of a compensable injury." Holton v. Stoltze (1981), ___ Mont. ___, 637 P.2d 10, 13, 38 St.Rep. 1835, 1838.

Here, rather than a verification of compensable injury, the insurer received medical verification that Van Daveer was recovered and capable of returning to full duty as of May 1, 1979.

Although, based on depositions taken nearly a year later, the court determined Van Daveer's temporary total disability payments should have extended beyond that date, we find it was not unreasonable for the insurer to rely on the medical releases. We therefore reverse the court's imposition of a 20 percent penalty.

ATTORNEY FEES

Insurer's entire argument that attorney fees were improperly awarded is based on the premise that Van Daveer should not prevail on the other issues before the Court.

The court awarded attorney fees. Section 39-71-611, MCA, provides for such an award: "In the event an insurer denies liability for a claim for compensation or terminates compensation benefits and the claim is later adjudged

-8-

compensable by the workers' compensation judge or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the workers' compensation court."

Here, the insurer did not deny liability but did terminate compensation benefits on a claim which has been upheld as compensable. We, therefore, affirm the court's award of reasonable costs and attorney fees.

We remand this case to the Workers' Compensation Court for action in accordance with this opinion.

_____
                                      Justice

We Concur:

_____

_____

_____

_____
        Justices

Mr. Justice Frank B. Morrison concurring:

I concur in part, and dissent in part. This case need not be remanded as claimant is not entitled to an impaired earning capacity award. The record contains a total lack of evidence to support a finding that claimant suffered a 20% loss of earning capacity. The following evidence bears upon that question.

DEPOSITION OF CLAIMANT:
(pp. 16, 17, 18)

"Q. Now, what type of work do you do all day now at the present time?

"A. Like I said, most of the week, at least 35 hours is desk work, is design work. And 5 hours a week is field work, which involves traveling and inspecting.

"Q. Your degree from Bozeman is in Civil Engineering, is that correct?

"A. Correct.

"Q. You are employed by the Montana Power Company as an engineer?

"A. Correct.

"Q. And you are familiar, are you John, with the type of work that civil engineers do?

"A. Yes, I am.

"Q. You are able, I take it, to do your present job, is that correct?

"A. That's correct.

"Q. Are there some civil engineering jobs that you feel that you would be unable to do?

"A. The area I would limit myself to would be, in fact, if I was to have a job that required a great deal of traveling possibly heavy construction.

"Q. Can you tell the reason for that opinion?

"A. I would say that I would be hesitant to do something like that because I really haven't tried to test the full capabilities of my physical well being as far as complete healing from the injuries. And I wouldn't want to jeopardize myself or anybody else in such a situation where

I might get hurt say if I was to be in the proximity of heavy construction and something did happen and I was called on to do something that required some heavy physical response.

"Q.  Are there any activities that you can't do now that you could do before your injury?

"A.  Not that I know of.  I haven't tried alot of things afterwards."

At page 36 of the deposition the claimant gave the following responses to questions propounded on cross-examination:

"Q.  I mean in the field of civil engineering itself.  Okay, putting aside the question of whether there was an accident involving heavy equipment and you being around and called to lift a vehicle off of somebody or something like that, but just in your field alone of civil engineering, there is nothing that requires any functions that you can't perform, is there?

"A.  The only area I would question myself in doing is possibly if I was on a large inspecting job which would require me to do alot of climbing for a long period of time.

"Q.  Other than that, the performance, there is nothing you could conceive of that you couldn't do, is there?

"A.  No."

The deposition of the treating physician was admitted.

Dr. John D. Bartlett gave the following testimony:

"Q.  Okay, at the time that you examined him on January 4, 1979, did you form an opinion, based upon a reasonable degree of medical certainty, as to whether he had any impairment or disability from this accident at Stauffer Chemical Company?

"A.  I felt that he was physically fit for duty, yes.

"Q.  You felt that he was without any impairment or disability?

"A.  Yes."

The only testimony in the record to support a permanent disability award is claimant's testimony that he might limit himself in his work from having to do a "great deal of traveling and possibly heavy construction."  There is not even self-serving testimony by the claimant that such a limitation would in any way affect his ability to earn in the future.  Although it is preferable to call an employer, a supervisor, or some expert witness

- 11 -

to establish that physicial limitations affect earning capacity, some "substantial credibile evidence" could be provided by the claimant himself. In this record, even that support for the award is lacking. In fact, the only medical evidence in the record suggests that claimant has neither physical impairment nor disability. I do not agree with the suggestion in the majority opinion that a medical finding of percentage of "disability of the whole man or of any member of the body" is determinative of an issue involving impaired earning capacity. Nevertheless, the medical testimony in this record, when viewed in conjunction with claimant's testimony, does not support the finding of a 20% impaired earning capacity and therefore the finding should be set aside.

I differ with the majority in remanding this case. The claimant simply failed in his effort to provide any evidence of impaired earning capacity and therefore that aspect of claimant's case must fail. The result of the majority opinion is to give claimant a second opportunity to provide evidence not produced initially. I know of no legal support for such action.

I agree with the majority's position on the balance of issues. Based upon claimant's testimony there is some "substantial credible evidence" to support an award of temporary total disability payments to claimant until August 1, 1979. However, in light of the treating physician's finding that claimant could return to work in February of 1979, and notice thereof to the insurer, a penalty should not have been assessed against insurer for suspending temporary total payments.

I would affirm the Court's award of additional temporary total compensation benefits, affirm the award of costs and attorney fees, and modify the judgment to exclude therefrom the award for loss of future earning capacity and penalty.

Justice

- 12 -

Mr. Justice John C. Sheehy concurring in part and dissenting in part:

I concur with the majority in the resolution of the issues of temporary total disability payments, and attorney fees. I disagree with and dissent from the majority opinion insofar as it remands the indemnity award, and denies the worker's right to a penalty in this case.

It distorts the record to say that there is no basis in the evidence and in the findings and conclusions for the indemnity award. (The indemnity award is for permanent partial loss of earning capacity.)

At the outset, it is stated here as reinforcement that when the Workers' Compensation Court is considering an indemnity award, it need not consider as a determinative fact that the employee is earning as much or more money as he did before the injury. Fermo v. Superline Products (1978), 175 Mont. 345, 574 P.2d 251. Of course, if loss of earning capacity can be proven through an actual, post-injury loss of earnings, that is an item for the Workers' Compensation Court to consider. Walker v. H. F. Johnson, Inc. (1978), 180 Mont. 405, 591 P.2d 181. It was settled in Shaffer v. Midland Empire Packing Co. (1953), 127 Mont. 211, 213-214, 259 P.2d 340, 342, that the test of whether an injured worker is entitled to an indemnity award is not whether there has been a loss of earnings or income caused by the injury, but rather whether there has been a loss of earning capacity--a loss of ability to earn in the open labor market.

The evidence in this case discloses that this injured worker has sustained a loss of ability to earn in the open labor market. This injury occurred when the employee, working as a switch man, was crushed between a brick wall

-13-

and a moving train car. His injuries were found by the Workers' Compensation Court to be: "blunt trauma to the chest and abdomen; abrasion right lobe of liver; hemo-peritoneum; contusion to left kidney with hematoma at base of gallbladder; hemopneumothorax of right lung; [and] fractured ribs 5 through 11 on the left." He was substantially and seriously injured.

With respect to the worker's residual post-injury difficulties, the Workers' Compensation Court made findings that the worker has occasional discomfort on the left side of his chest due to the nature of the healing of his ribs; that when he sits for a long period of time, he experiences tiredness in his back and pain in his legs. The court also found that after his injury the worker received a degree in civil engineering from Montana State University and is employed as a civil engineer by the Montana Power Company. However, the worker's opportunity to work as a civil engineer is limited in that he can not accept a job that requires a great deal of traveling or that is involved with heavy construction. The claimant stated the reason for this limitation is that he would not want to jeopardize himself or anybody else in a situation where ". . . I might get hurt, say if I was to be in the proximity of heavy construction and something did happen and I was called on to do something that required some heavy physical response." The pain and "bothersomeness" in his rib cage is due to the fact that a couple of the ribs have healed a little out of place and they protrude farther from his chest than the other ribs. He has a continuing dull pain in the chest.

On these findings, the Workers' Compensation Court concluded:

> "The evidence clearly establishes that claimant still suffers some residual effects from his injury that would limit his ability to obtain certain employment <u>as an engineer</u> in the open labor market. It appears that an indemnity award of 100 weeks would be an appropriate award in his case." (Emphasis added.)

We are required to view the evidence on appeal of a case of this kind in the light most favorable to the prevailing party. Hellickson v. Barrett Mobile Home Transport, Inc. (1973), 161 Mont. 455, 507 P.2d 523, 525. In considering such evidence we should bear in mind these rules:

> ". . . We will not substitute our judgment for that of the trier of fact, but rather will only consider whether substantial credible evidence supports the findings and conclusions. Those findings will not be overturned by this court unless there is a clear preponderance of evidence against them. We will view the evidence in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence, yet still support the findings . . ." Cameron v. Cameron (1978), 179 Mont. 219, 228, 587 P.2d 939, 945.

We owe a good deal of respect to the findings and conclusions adopted by the Workers' Compensation judge. Under section 39-71-2905, MCA, he is given the power to fix and determine any benefits to be paid and to specify the manner of payment to a claimant. The Workers' Compensation judge is required in that same statute to make his determinations in accordance with the law as set forth in Ch. 71 of Title 39, MCA. Indemnity awards arise by virtue of the provisions of sections 39-71-705 and -706, MCA. The latter section provides that in all cases of permanent injury less than total, the compensation for permanent partial disability shall bear such relation as the disability bears, in this case, to 500 weeks. By determining here that the claimant

-15-

was entitled to 100 weeks for his indemnity award, the Workers' Compensation Court impliedly found that he had suffered a loss of 20 percent of earning capacity. The record bears this out.

Although an estimate from a medical person as to the percentage of total disability of an injured worker is undoubtedly helpful to the Workers' Compensation Court, I find nothing in the law which requires the testimony of a medical person as an absolute requisite for such an award. There is no reason why the Workers' Compensation Court cannot rely on the uncontroverted evidence of the claimant as to the amount and character of his disability, from which the Workers' Compensation Court may draw a conclusion as to the amount of indemnity award to which the claimant is entitled. Section 39-71-706, MCA.

Taking into account that there is a different Workers' Compensation judge now sitting than the one who heard and determined this case, it appears quite unnecessary to me to remand this case to the Workers' Compensation judge for what will be a ministerial act: his determination that the injuries shown by the claimant amount to 20 percent of his earning capacity.

I also disagree with the majority conclusion that this claimant is not entitled to a penalty award based on the actions of the insurer in connection with his claim. The majority is substituting its opinion for that of the Workers' Compensation judge upon entirely wrong factors. This is not a case where the employer-insurer had a right to rely on medical evidence so as to refuse all further compensation.

Section 39-71-2907, MCA, provides:

". . . The question of unreasonable delay or refusal shall be determined by the workers' compensation judge, and such a finding constitutes good cause to rescind, alter, or amend any order, decision, or award previously made in the cause for the purpose of making the increase provided herein."

The Workers' Compensation Court concluded that "[t]he position of the insurance carrier that claimant is entitled to absolutely nothing constitutes a delay or refusal to pay compensation benefits . . ." (Emphasis added.) The record supports this finding and conclusion.

A review of the whole record, not shown to have been made by the majority, would indicate that there was an unreasonable delay or refusal to pay compensation to the worker.

On March 9, 1979, Mr. Keene, branch manager of the adjustment firm handling this case, wrote to the worker stating that he had been overpaid for 36 days for a total of $966.86, and demanding that Van Daveer repay that amount. This was during the period of the worker's disability, which the majority concurs is correctly computed.

On March 21, 1979, counsel for the worker wrote to Mr. Keene advising him of the development of a hernia in the long abdominal incision. In that letter, counsel advised Keene that the overpayment could be deducted from the eventual entitlement to the worker, and that this was a case where there would be a claim over and above the temporary total disability benefits.

On March 30, 1979, Keene wrote to counsel for the worker stating that they were going to deny further compensation by relying on the medical report of Dr. Bartlett that the worker suffered no residual disability, although at that time Keene had been advised that an operation for the hernia had occurred.

-17-

On June 8, 1979, Dr. Bartlett wrote to Keene, stating that he had last seen the worker on March 29, 1979, and that he had released the worker for full duty as of May 1, 1979. Dr. Bartlett also indicated that since he had not seen the worker lately, he could give no further information at that time.

On July 2, 1979, the worker's counsel wrote to the adjustment firm stating that a claim would be made for an indemnity award, and setting forth the amount of partial disability then owed to the worker. The letter invited any offer that the firm might make with respect to settling the case. The insurer did not respond.

On August 23, 1979, Keene wrote to the Workers' Compensation Division, asking for permission to pay the worker a temporary total disability of 6 weeks, and to deduct therefrom the overpayment of $966.86, leaving a net payment to the employee of $161.14.

On September 28, 1979, Keene addressed a letter to counsel for the worker stating that he had received a letter from the Workers' Compensation Division authorizing the deduction of the overpayment and that Keene had surrendered a check in the sum of $161.14 "as final payment of compensation benefits owing."

On February 7, 1980, the employee filed his petition for a hearing to determine the compensation benefits to which he was entitled. In that petition, he asked for an indemnity award for prospective loss of earning capacity.

On April 30, 1980, the Workers' Compensation judge entered a pretrial order, in which he noted the worker contended he was entitled to an indemnity award for prospective loss

-18-

of earning capacity, and in which the employer contended that the claimant had been paid all medical and compensation benefits to which he was entitled.

The case was tried on depositions, all taken on the same day. The claimant testified to his continuing disability. Keene testified that based on medical reports and the further testimony that day of the worker, he would still contend that the worker was not entitled to one further penny as compensation benefits.

Thus, months after the letter of September 28, 1979, it was apparent that Keene still refused to change his mind, and was relying on medical reports that obviously were not pertinent to the present claimed condition of the worker. The Workers' Compensation Court saw this as an unreasonable delay or denial of compensation benefits. The record sustains the court. When there is substantial evidence to support the court's findings and conclusions, it is the duty of this Court to affirm those findings. Walker v. H. F. Johnson, supra.

I would affirm the Workers' Compensation Court in toto.

_____
John C. Sheehy
Justice

Mr. Chief Justice Frank I. Haswell:

I concur in the foregoing opinion of Mr. Justice Sheehy.

_____
Chief Justice

-19-