No. 13649

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

VICTOR FERMO,

Claimant and Respondent,

-vs-

SUPERLINE PRODUCTS, Employer,

and

AETNA CASUALTY AND SURETY COMPANY,

Defendant and Appellant.

---

Appeal from: Workers' Compensation Court
Honorable William E. Hunt, Judge presiding.

Counsel of Record:

For Appellant:

Anderson, Symmes, Forbes, Peete and Brown,
Billings, Montana
Richard F. Cebull argued, Billings, Montana

For Respondent:

Hoyt and Bottomly, Great Falls, Montana
John C. Hoyt argued, Great Falls, Montana

---

Submitted: September 20, 1977

Decided: JAN 10 1978

Filed: JAN 10 1978

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

On March 28, 1975, claimant filed a claim for compensation with the Montana Division of Workers' Compensation, as a result of an injury sustained by claimant in the course and scope of his employment on February 26, 1975. Claimant received temporary total disability benefits for the period February 28, 1975 through August 24, 1975, approximately when he returned to his work.

Insurer offered claimant $1,452 as a compromise settlement for claimant's impairment. On July 28, 1976, claimant filed a petition for hearing with the Workers' Compensation Court. The matter came for trial before the Workers' Compensation Court on August 25, 1976. The Court issued findings of fact and conclusions of law holding claimant entitled to a permanent partial disability award of 125 weeks at claimant's permanent partial disability rate of $60 per week, which equals the sum of $7,500. The Workers' Compensation Court ordered $7,500 to be paid to claimant in a lump sum. The order was stayed, pending the insurer's appeal to this Court.

The sole issue on appeal is whether or not there is substantial evidence to support the Workers' Compensation Court's findings that claimant is entitled to a permanent partial disability award of $7,500.

Claimant's occupation requires the loading and unloading of trucks, either by use of a forklift or manual labor, and the occasional driving of a semi-truck. On February 26, 1975, claimant sustained an injury to his left wrist when a hack or bundle of brick fell on his left arm. The injury aggravated a preexisting injury, claimant having fractured his navicular bone

some 20 years prior to the instant injury. As a result of the recent wrist injury, claimant underwent a surgical procedure known as a radial styloidectomy in April 1975. Claimant still complains of symptoms which, examining physicians agree, might be remedied only by a wrist fusion.

On December 30, 1975, a Great Falls orthopedic surgeon and claimant's treating physician, evaluated claimant's condition and rated his disability:

> "He (sic) permanent disability is approximately 25% disability of the whole man."

On January 22, 1976, after consultation with the insurer, the treating orthopedic surgeon sent a letter to insurer stating:

> "The permanent partial impairment of this man's left wrist amounts to 11%. This is based on loss of motion.
> * * *"

This evaluation was based on the American Medical Association's Guide to the Evaluation of Physical Impairment.

On March 18, 1976, claimant was examined by a second physician at the request of the insurer, but no disability rating by this second doctor is found in the record.

Based upon the examining physician's ratings of claimant's disability, claimant's counsel concluded the following potential recoveries were available to claimant and these options were presented to the Workers' Compensation Court in his brief:

Using the doctor's ratings at claimant's weekly permanent partial rate of $60 the following computations were presented:

> "11% of the upper extremity equal 30.8 weeks or $1,848.00
> " 7% of the whole man equal 35 weeks or $2,100.00
> "25% of the upper extremity equals 70 weeks or $4,200.00
> "25% of the whole man equal 125 weeks or $7,500.00."

The basic dispute is the insurer's contention that claimant is not entitled to a disability rating as to the "whole man" when

claimant's disability is limited to the wrist, one extremity. Thus, the issue becomes whether a claimant who sustains an industrial injury to an extremity of the body, is limited in his claim for compensation for permanent partial disability benefits to the specified injury statute, section 92-709, R.C.M. 1947, or whether a claimant is also entitled to permanent partial disability benefits under section 92-703.1, R.C.M. 1947, which provides for the payment of compensation for injury to any member of the body, where the injury causes partial disability.

In the instant case it is argued by the insurer that the claimant cannot collect under section 92-703.1 because he has suffered no loss in earning capacity and the record shows he is earning more money after the injury, than before. The record also clearly shows the doctor gave him a 25 percent rating of disability based on the whole man. This Court on these facts holds that an award calculated solely in terms of a percentage disability figure applied to previous earnings will stand, regardless of whether actual post injury earnings are greater than before the injury. This will not bar a recovery under section 92-703.1, as long as other evidence sufficiently establishing the degree of disability appears in the record.

Actual post injury earnings are but one item of evidence to be considered in the determira tion of future earning capacity. This Court in Shaffer v. Midland Empire Packing Co., (1953), 213, 127 Mont. 211/ 259 P.2d 340, 342, set out the test for loss of earning capacity:

> "The test * * * is not whether there has been a
> loss of earnings or income caused by the injury,
> but rather has there been a loss of earning capa-
> city--a loss of ability to earn in the open labor
> market."

In Midland-Ross Corporation v. Industrial Commission, (1971), 107 Ariz. 311, 486 P.2d 793, the court held that evidence that claimant was required to work in pain rebutted the presumption of no loss of earning capacity raised by claimant's return to his former employment. The rationale of the Arizona case extends to nonschedule permanent partial injuries the schedule-injury presumption that a definite physical impairment will probably sooner or later have an adverse effect on earning capacity.

It may be years before the effect is felt. But a man with a stiffened arm or damaged back or badly weakened eye will presumably have a harder time doing his work well and meeting the competition of young and healthy men. When a man stands before the Workers' Compensation Court with proven permanent physical injuries, for which the exclusive remedy clause has abolished all possibility of common-law damages, it is not justifiable to tell him he has undergone no impairment of earning capacity, solely on the strength of current pay checks.

Usually the rebutting evidence attacks the post injury wage itself and shows that its size is an unfair criterion of capacity. Unreliability of post injury earnings may be due to a number of variables:

1. Increase in general wage levels since the accident.

2. Claimant's own maturity or training.

3. Longer hours worked by the claimant after the accident.

4. Payment of wages disproportionate to capacity to work out of sympathy to claimant.

The ultimate objective of the disability test is by discounting the above variables to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels,

hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury.

Therefore, it is uniformily held without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even if there is evidence of some actual post injury earnings equaling or exceeding those received before the accident. Travelers Insurance Company v. McLellan, (1961), 288 F.2d 250.

In the instant case the record clearly shows claimant is performing the same work as before and earning more money. However, it also discloses claimant's pain is so extreme that at times he cannot conduct his work with the speed and efficiency he had before the accident. It seems very likely a wrist fusion will be required to relieve the pain which will affect his body function as a whole. We note that the Workers' Compensation Act has always been liberally construed in favor of the injured workman. Section 92-838, R.C.M. 1947; Rumsey v. Cardinal Petroleum, (1975), 166 Mont. 17, 530 P.2d 433; State ex rel. Romero v. District Court, (1973), 162 Mont. 358, 513 P.2d 265.

Here, there seems to be a loss of capacity to perform as well as before the injury, and a loss of ability to compete and earn in the open market. This qualifies claimant under the standard to be applied when determining his right to be paid under section 92-703.1 for diminished earning capacity.

The Workers' Compensation award made under section 92-703.1, R.C.M. 1947, is affirmed.

_____
Justice

- 6 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.