No. 81-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

KERRY K. HAFER,

Claimant and Appellant,

vs.

ANACONDA ALUMINUM COMPANY,

Employer,

and

ANACONDA ALUMINUM COMPANY,

Defendant and Respondent.

_____

Appeal from: Workers' Compensation Court
Honorable T~~im Rearden~~, William Hunt Judge

Counsel of Record:

For Appellant:

Hoyt and Trieweiler, Whitefish, Montana
Terry N. Trieweiler argued, Whitefish, Montana

For Respondent:

Utick and Grosfield, Helena, Montana
Norman Grosfield argued, Helena, Montana

_____

Submitted: March 3, 1982

Decided: April 29, 1982

Filed: APR 29 1982

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant Kerry Hafer (Hafer) appeals from the judgment of the Workers' Compensation Court. Hafer questions the method used by the court to compute his award. He presents the following issues for review:

(1) Whether there was substantial evidence to support the hearing examiner's finding that Hafer's injury affects only his elbow, rather than his whole arm.

(2) Whether the limitations of 39-71-705 through 39-71-708, MCA, apply to a worker who has elected to seek benefits for lost earning capacity under 39-71-703, MCA.

We vacate and remand.

This action was commenced on November 26, 1979, by Hafer's petition for hearing in the Workers' Compensation Court. In his petition, Hafer alleged that he was injured on June 17, 1977, during the course of his employment with respondent, Anaconda Aluminum Company (Anaconda). He alleged that he fractured his elbow in an industrial accident on that day, that as a result of that industrial injury he sustained a permanent partial disability, and that Anaconda refused to compensate him for the full extent of his partial disability.

As a result of the injury, it was necessary for a surgeon to surgically implant a silastic prothesis in Hafer's elbow on August 21, 1978. The manufacturer of the device disclaims its effectiveness for people who engage in strenuous physical activity. The orthopedic surgeon who performed the surgery on the elbow evaluated Hafer's permanent partial impairment at 20% of his left upper extremity at the shoulder.

-2-

Hafer was 24 years old and had been working for Anaconda three years at the time of the trial. He did not graduate from high school and prior to working for Anaconda, his primary job experience included mostly physical labor. Since the surgery, Hafer has resumed his old job with Anaconda as an iron worker and earns approximately $10.00 per hour. At the time of the accident, he was earning approximately $7.00 per hour.

Robert Redinger, employee relations manager for Anaconda, testified that if Hafer were unable to perform the duties of an iron worker, Anaconda would attempt to find a position which Hafer could perform. Entry level clerical workers earn about $6.00 per hour while iron workers earn about $10.00 per hour. An employee of the Montana State Job Service, testified as to the employment prospects of Hafer if he were not working for Anaconda. A person who has no specialized training other than as a heavy laborer who had an injury which prohibited him from performing strenuous physical labor was eliminated from about 90% of the work force in Flathead County and could expect to earn less than $700.00 per month.

The hearing examiner's conclusions of law included in part:

> "4. Claimant was entitled, under 39-71-709, M.C.A., to elect whether to pursue a disability award under 39-71-703 or an indemnity award under 39-71-705 through 39-71-708, M.C.A. Plaintiff elected to proceed under 39-71-703, M.C.A.

> "5. Even though his actual earnings have not been diminished since his return to work, his ability to compete in the open labor market has been impaired by a factor of 40 percent, i.e., if he had to find another job, it would probably pay 60% of what he could earn before he injured his elbow. Finding of fact no. 20, supra, Fermo v. Superline Products, 574 P.2d 251, 253 (1978).

".  .  .

"10.  If claimant had elected to pursue an indemnity award the 240 weeks would have been reduced in accordance with this formula in 39-71-706, M.C.A.:  '.  .  . indemnity benefits for permanent disability to a member or members shall be proportionate to loss or loss of use of the member. . .'  As the record is lacking in evidence relating the severity of claimant's injury to the severity of an amputation at the elbow, the median of the impairment rating (20%) and the earning capacity diminution (40%) will be taken.  This yields a factor of 30% for the comparison of claimant's injury to a total loss of the arm at the elbow.  30% of 240 weeks equals 72 weeks."  (As subsequently appears in this opinion, the correct total is 280 weeks for injury to the arm from the shoulder.)

"11.  The significance of calculating an indemnity award is this proviso in the selection governing election of benefits, M.C.A. 39-71-709 in subsection (3):  'A worker who has elected to proceed under 39-71-703 . . . shall not be entitled to a greater benefit, including compensation paid under 39-71-703, than he would have received if he had proceeded exclusively under 39-71-705 through 39-71-708. . .'  This sets a limitation on claimant's award of $81.00 times 72 weeks, or $5,832.00."  (As subsequently appears in this opinion, this computation is not applicable.)

"12.  While the foregoing analysis has assumed that claimant's case does not come under the unscheduled or 'whole man' sorts of disabilities discussed in the Fermo and Walker cases, a discussion of how the law there would have applied to the instant facts if claimant had demonstrated a whole man injury may not be amiss.  The same 30% of complete loss factor should be applied to the 500-week maximum to yield a durational limit of 150 weeks.  This would have been multiplied by the earning capacity loss of $74.35 a week to make an award of $11,152.50.

"13.  However, this is not a whole man injury.  Pursuant to 39-71-703, which sets claimant's weekly benefit at $74.35, and 39-71-709(3), which has the effect of limiting the duration of his benefit to slightly over 78 weeks, claimant is entitled to $5,832.00."  (As subsequently appears in this opinion, this conclusion is not applicable in the present case.)

The Workers' Compensation Court adopted the hearing examiner's findings and conclusions.  The court entered a judgment and order on behalf of Hafer finding that he was entitled to a

partial disability award of $81.00 times 72 weeks for $5,832.00, plus reasonable attorney's fees and his costs.

I.

Whether there was substantial evidence to support the hearing examiner's finding that Hafer's injury affects only his elbow, rather than his whole arm?

Both parties agreed before the trial that the injury affected Hafer's whole arm. Anaconda concedes this issue. Hafer's injury shall be considered an injury of the arm from the shoulder which allows benefits to be paid for a maximum of 280 weeks under 39-71-705, MCA, rather than an injury of the arm from the elbow which allows a maximum of 240 weeks of benefits.

II.

Whether the limitations of 39-71-705 through 39-71-708, MCA, apply to a worker who has elected to seek benefits for lost earning capacity under 39-71-703?

"[A] worker whose injury results in partial disability is entitled to receive compensation under 39-71-703 or indemnity benefits under 39-71-705 through 39-71-708." Section 39-71-709(1), MCA. Hafer elected compensation under 39-71-703, which provides:

> "(1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.
>
> "(2) The compensation shall be paid during the period of disability, not exceeding, however, 500 weeks in cases of partial disability. However, compensation for partial disability resulting from the loss of or injury to any member shall not be payable for a greater number of weeks than is specified in 39-71-705 for the loss of the member."

Hafer's income was greater when he filed his petition than at the time of the accident. However, evidence was presented that Hafer's capacity to earn in the open labor market had been diminished because of the accident.

> "Actual post injury earnings are but one item of evidence to be considered in the determination of future earning capacity. This Court in Shaffer v. Midland Empire Packing Co. (1953), 127 Mont. 211, 213, 259 P.2d 340, 342, set out the test for loss of earning capacity:

> "'The test . . . is not whether there has been a loss of earnings or income caused by the injury, but rather has there been a loss of earning capacity -- a loss of ability to earn in the open labor market.'" Fermo v. Superline Products (1978), 175 Mont. 345, 348, 574 P.2d 251, 253.

In Fermo, the claimant injured his wrist and elected to receive compensation under the loss of earning capacity provision. Fermo had returned to his old job and was earning a greater income than he was at the time of the accident. The record disclosed that although he was doing the same work, pain from the injury did not allow him to work with the speed and efficiency that he had before the accident. This Court allowed Fermo to elect and to receive compensation under the loss of earning capacity statute.

Anaconda contends that a claimant whose earnings are not actually decreased cannot elect between 39-71-703 (loss of earning capacity) and 39-71-705 (indemnity). In support of their position, Anaconda cites Walker v. H. F. Johnson, Inc. (1978), 180 Mont. 405, 591 P.2d 181. Anaconda relies on an example used by this Court in the Walker order on rehearing.

> "An example may clarify the distinction. Assume two workers earning the same salary suffer identical injuries during the course of their employment. The injuries result in the amputation of each worker's right leg at the knee. Assume further that Worker A's job at the time of his injury required him

-6-

to stand and be mobile. As a result of his injury, he is unable to return to this job and is not trained for any others available at comparable wages. Assume worker B's job at the time of his injury was a sitting job not requiring mobility. As a result of his injury, he misses only a short time and is able to return to his job <u>with</u> <u>no</u> <u>loss</u> <u>of</u> <u>efficiency</u> <u>or</u> <u>wages</u>. [Emphasis added.]

"Under the election doctrine, worker A could elect between compensation based on actual loss of earning capacity under section 92-703.1, R.C.M. 1947, now section 39-71-703 MCA, or indemnity benefits for possible future loss of earning capacity under section 92-709, R.C.M. 1947, now section 39-71-705 MCA, for his enumerated injury.

"Worker B, however, has suffered no actual loss of earning capacity. He, therefore, would be compelled to apply for indemnity benefits under section 92-709 for his enumerated injury to compensate for possible loss of earning capacity in the future." Walker, _____ Mont. at _____, _____ P.2d at _____, 35 St.Rep. at 1673A-1673B.

In the example, worker B, although losing his leg, lost no ability to perform his work. From the limited facts given, it appears that if worker B had been required to seek another job on the open labor market, he would have been able to compete for a job with similar earnings. That was not the situation in <u>Fermo</u>. Although Fermo returned to his old job and was earning more, he could not perform his duties with the same ease and speed. If he had been required to seek a new job in the open labor market, he would have been unable to compete because of his injury.

Hafer's situation resembles that of Fermo. Hafer returned to his old job and is earning more. He has an implant in his elbow and is unable to straighten his arm; the turning of his arm is limited. During the hearing, Hafer testified that although he could perform his duties as an iron worker, he could not perform them with the same ease. He also indicated that his arm was weaker and that

it hurt his elbow and wrist when he was bolting a shell together. In addition, Hafer's elbow prosthesis may fail and require replacement, adding the risk of inability to continue his work at an unknown future date. Unlike worker B, Hafer did lose some efficiency. If Hafer were required to go out in the open labor market in search of a job, an employee of the State Job Service testified that because of the injury, his earning capacity would be greatly diminished. This Court in Walker, 180 Mont. at 411, 591 P.2d at 184, held that this sort of testimony is sufficient to establish a loss of earning capacity. We therefore hold that Hafer has established a sufficient factual basis so that he can properly elect to receive compensation under section 39-71-703, MCA, for loss of earning capacity.

The hearing examiner limited the amount of Hafer's compensation to the amount that he could have received if he had elected compensation under 39-71-705. In conclusion of law no. 11, the hearing examiner bases this limitation on 39-71-709(3), which provides:

> "A worker who has elected to proceed under 39-71-703 may withdraw his election at any time and is entitled to receive indemnity benefits under 39-71-705 through 39-71-708; provided, however, that he shall not be entitled to a greater benefit, including compensation paid under 39-71-703, than he would have received if he had proceeded exclusively under 39-71-705 through 39-71-708 and provided further that he shall not be entitled to receive benefits under both 39-71-703 and 39-71-705 through 39-71-708 during any month." (Emphasis added.)

The hearing examiner relied on the parts of 39-71-709(3) which have been emphasized. This Court does not find that to be a proper reading of the statute. The limitation on the benefit paid does not apply any time a worker proceeds under 39-71-703 but only when that worker withdraws his

election under 39-71-703 and claims indemnity benefits under 39-71-705 through 39-71-708. Hafer did not change his election from 39-71-703 to 39-71-705 and therefore the amount of his compensation is not limited by 39-71-709(3).

If the Workers' Compensation Court concludes again that a factor of 30% should be applied for the impairment rating, and that the earning capacity loss is $74.35 per week, as set forth in the original conclusions, then the computations in this case would be as follows: 30% times the 500 week maximum yields a durational limit of 150 weeks for compensation. Such 150 weeks need not be reduced because that falls within the 280 weeks allowed for one arm at or near the shoulder under section 39-71-705. 150 weeks times the earning capacity loss of $74.35 per week yields an award of $11,152.50.

The judgment of the Workers' Compensation Court is vacated, and the cause is remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-