No. 83-178

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

E. L. McDANOLD,

        Claimant and Appellant,

  -vs-

B. N. TRANSPORT, INC., Employer,

    and

B. N. TRANSPORT, INC.,

        Defendant and Respondent.

_____

APPEAL FROM:  The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

           William T. Kelly; Kelly, Halverson & Sheehy, Billings,
           Montana
           Gene A. Picotte, Clancy, Montana

      For Respondent:

           Andrew J. Utick, Helena, Montana
           William Brasher, Billings, Montana


_____

              Submitted on Briefs:  January 19, 1984

                        Decided:  March 27, 1984


Filed:   MAR 2 1984

_____
                      Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Claimant E.L. McDanold appeals from the judgment of the Workers' Compensation Court, on remand from this Court, denying any further entitlement to disability benefits. We reverse and remand.

On June 23, 1971, claimant suffered a work-related injury to his right ankle. Claimant had been securely employed as a truck driver at a weekly wage of $162.80. Following the injury, he was unable to return to his job as a truck driver. Claimant could not find full time employment until April of 1974 when he began work as a clerk in a Montana Liquor Store.

Claimant received benefits for temporary total, and permanent partial disability totalling $10,973.68.

On September 25, 1975, claimant's benefits were terminated pursuant to an opinion of the Workers' Compensation Division Bureau chief. The termination was upheld by the Workers' Compensation Court. On appeal, McDanold v. B.N. Transport, Inc. (Mont. 1981), 634 P.2d 175, 38 St.Rep. 1466, this Court held that the period of permanent partial disability benefits was in addition to the period of temporary total disability benefits. This Court also attempted to give direction to the compensation court on determination of the period of a permanent partial disability award:

> "The claimant here may be found to have a certain percentage impairment of his foot and ankle. Under section 92-709, he would receive benefits for a period equal to that same percentage of 180 weeks. If, however, the claimant can show that he has suffered a loss of earning capacity as measured under the terms of former section 92-703, then his injury can be translated into a percentage impairment of the whole man. In that event, he could receive benefits for a period equal to the whole man percentage impairment multiplied by 500

2

weeks, subject to a maximum of 180 weeks."
McDanold at 634 P.2d 180.

Unfortunately, this direction may have been misleading. We will attempt to remedy the confusion generated by that opinion, other cases on the issue, and the practice of many in the workers' compensation field.

This case was remanded to the Compensation Court with directions to determine:

1. The end of the claimant's healing period.

2. Claimant's loss of earning capacity, if any, from which the court shall determine claimant's right to receive benefits under former section 92-703, R.C.M. 1947.

3. Claimant's disability rating as to the whole man if the court determines that he may proceed under section 92-703, R.C.M. 1947.

4. Exclusive of the healing period, the number of weeks of benefits to which the claimant is still entitled under section 92-703 or 92-709, R.C.M. 1947, whichever is applicable, subject to the maximum of 180 weeks.

5. The claimant's costs and attorney fees pursuant to section 39-71-611, MCA, if he is found to be entitled to further benefits.

The Workers' Compensation Court found:

1. The claimant's healing period ended April 9, 1973.

2. Claimant suffered a loss in earning capacity.

3. Claimant had a 25% permanent partial whole man disability.

4. Claimant is entitled to 125 weeks of benefits (25% x 500).

The court then went on to calculate the claimant's entitlement by comparing his weekly wage when injured to actual wages earned in subsequent years. When the claimant's

3

store clerk wages climbed, due to inflation, to a rate higher than his 1971 pre-injury wages as a truck driver, the court found his entitlement had ended. The court concluded that claimant had been paid more than the $9,593.95 owed him, and was entitled to no further benefits.

Claimant again appeals to this Court, raising the following issues:

1. Was claimant's healing period incorrectly determined?

2. Is claimant's injury limited to his right foot at the ankle?

3. Is the determination of 25% whole man disability inconsistent with the evidence and contrary to law?

4. How is a disability rating to be applied to weekly benefits and period of benefits?

5. Costs and attorney fees.

Temporary Total Disability

Claimant challenges the Compensation Court's finding that his healing period ended April 9, 1973. Claimant concedes that so far as the medical evidence was concerned the finding is well supported. Claimant argues, however, that after he had healed as far as his injuries would permit, he was still unable to find and hold full time employment until April 12, 1974. Claimant suggests that during the interim he was entitled to benefits under a "temporary partial" status.

We disagree. Claimant's concept of temporary partial disability is not supported by statute or case law. Nor was such a period found to be applicable to this case in the first appeal of this matter. McDanold v. B.N. Transport, Inc. (Mont. 1981), 634 P.2d 175, 38 St.Rep. 1466.

4

Hon. Frank B. Morrison
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana   59620

May 15, 1984

McDanold v. B. N. Transport, Inc., No. 83-178, March 27, 1984

Page 5, line 14 from bottom --- Hielson v. Beaver Pond, Inc. should read Nielson v. Beaver Pond, Inc.

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

Our present statutory scheme considers a worker temporarily totally disabled until such time as the worker is as far restored as the permanent character of his injuries will permit. "When the claimant has reached this stage in his healing process temporary total disability ceases, and partial disability begins if there is permanent partial disability." McAlear v. McKee (1976), 171 Mont. 462, 466, 558 P.2d 1134, 1137.

Claimant argues that medical science cannot have restored him to his full permanent partial ability prior to the time that he was actually able to resume regular full time employment. The inconsistency between the medical evidence and the evidence of ability to work is readily apparent. The Compensation Court should not rely exclusively on medical opinions of restoration when other credible evidence clearly demonstrates the healing process is not yet complete. In this case, however, the trial court's determination of the end of the healing period is supported by substantial credible evidence, and will not be overturned on appeal. Nielson v. Beaver Pond, Inc. (Mont. 1983), 661 P.2d 47, 49, 40 St.Rep. 489, 491.

Similarly, there is substantial medical evidence to support the trial court's finding that claimant's injury is confined to his right foot at the ankle.

Permanent Partial Disability

Claimant seeks permanent partial disability benefits for actual loss in his ability to earn under section 92-703 R.C.M. 1947. That statute, which has subsequently been repealed and replaced with section 39-71-703, MCA, read in part, as follows:

"[W]here the injured employee has a wife and three (3) children, or four (4) children residing within the United States who would be entitled to

compensation in case of his death, sixty-five per centum (65%) of the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter, subject to a maximum compensation of fifty-five dollars ($55.00) per week . . .. Such compensation shall be paid during the period of disability, not exceeding however, five hundred (500) weeks . . .."

The compensation and benefits provided for in the Workers' Compensation Act are based in part on the concept of disability, the inability or limited capacity of the injured worker to earn in the open labor market. Section 39-71-121, MCA.

A person is totally disabled when he totally loses his actual earnings or earning capability. Section 39-71-116(13) MCA. Partial disability is a similar loss less than total. Section 39-71-116(12), MCA.

A claimant may seek permanent partial disability benefits under section 39-71-703, MCA, for actual loss of earning capacity. Alternatively, his claim may be brought under sections 39-71-705-708, MCA which purportedly indemnify the worker for possible prospective loss in earning capacity due to injury to certain members of his body, whether an actual loss in earning capacity is demonstrable or not. Walker v. H.F. Johnson, Inc. (1978), 180 Mont. 405, 591 P.2d 181.

Under either route, compensation is to be proportional to the degree of disability resulting from the injury. This is axiomatic. Under section 39-71-703, MCA, compensation is made proportional to disability by the phrase "actual diminution in the worker's earning capacity." The greater the disability the greater the compensation. Similarly, under 92-703 R.C.M. 1947 (1971), compensation was made proportional by the phrase "difference between the wages

6

received at the time of the injury and the wages that such injured employee is able to earn thereafter."

Apparently a practice has arisen among those handling Workers' Compensation claims whereby benefits are no longer proportional to disability. The apparent method is to limit the number of weeks of benefits under 92-703 (now 39-71-703) by applying the disability rating to a maximum of 500 weeks. Thus, a person who suffered a 30% disability would be limited to 150 weeks (30% x 500) of compensation. But the degree of disability is also reflected in the weekly rate of compensation as described above. The net effect is to twice discount the benefits. This method of compensation violates a fair reading of the relevant statutes and offends even the most basic sense of fairness.

Section 39-71-703(2) and its predecessors provide that the compensation, proportional to disability as provided for in part (1), "shall be paid during the period of disability." The 500 week limit is simply a statutory maximum period for such compensation. The Legislature has further limited this period of disability to the number of benefit weeks for the comparable schedule injury under sections 39-71-705-708, MCA, but only when the injury is specifically listed in the schedule. Walker v. H.F. Johnson, Inc. (1979), 180 Mont. 405, 413, 591 P.2d 181, 185. Again, the same rule is found in 92-703 R.C.M. 1947: "[P]rovided, however, that compensation for partial disability resulting from the loss of or injury to any member shall not be payable for a greater number of weeks than is specified in section 92-709 [now 39-71-705] for the loss of such member." (emphasis added.)

There is no reason to apply the degree of disability to the period of compensation under section 92-703, now 39-71-703, and we so held in Walker. Instead, the

determination of disability is to be used in finding diminution in the capacity to earn as demonstrated below.

In contrast, section 39-71-706 (former 92-709) provides for applying the percentage of disability in determining the number of weeks of compensation under the _indemnity_ alternative, where injury is less than total loss of a scheduled member, or where the injury is a "whole man" injury not scheduled. Unfortunately, these provisions have also been applied to claims under 703. For example, in Head v. Larson & Missoula Service Co. (1979), 181 Mont. 129, 592 P.2d 507 this Court attempted to apply a 25% disability to the 500 weeks period under section 92-703.1 R.C.M. 1947 now 39-71-703, MCA to come up with 125 weeks of benefits. This procedure is in direct conflict with our holding in _Walker_ v. H.F. Johnson, Inc. (1979), 180 Mont. 405, 591 P.2d 181.

> "If the right to elect between sections 92-709 [now 39-71-705 (indemnity)] and 92-703.1 [now 39-71-703 (actual loss)] is to remain intact, a claimant whose injury was less than total and not among those listed in 92-709 [39-71-705 (scheduled)] could avoid the durational limitations recited in section 92-709 [such limitations are now found in 39-71-706] by simply electing to recover under 92-703.1 [now 39-71-703]." _Id._ at 413.

We find the procedure used in _Head_ is incorrect and expressly overrule the endorsement of that methodology. Disability benefits under section 92-703 R.C.M. 1947 now 39-71-703, MCA are to be paid for the duration of the disability not exceeding 500 weeks and subject _only_ to period limitations specifically listed in the indemnity schedule for loss of the member (one foot at the ankle - 180 weeks). Unfortunately, this Court incorrectly explained the calculation of the period of benefits in the first appeal of this matter, and thus established the "law of the case." However, the error is inconsequential.

8

We will hold as a matter of law that the evidence does not support a disability rating of less than 50%. Therefore even if the 500 weeks were reduced by the percentage of disability as suggested in our first opinion the claimant would have 250 weeks but because of the schedule limitation of 180 weeks is only entitled to 180 weeks. This is a specific member injury with a maximum entitlement of less than what claimant would receive with a body disability. Therefore, it is harmless error to calculate in the manner suggested by our first opinion.

Determination of Weekly Benefit Rate

Under section 92-703, R.C.M. 1947, now section 39-71-703, MCA disability is always to be determined by evaluation of the whole man. The disability rating is to be determined by comparing earning capacity absent injury with earning capacity given the injury.

In this case, the trial court's determination that claimant is 25% disabled flies in the face of the evidence that claimant's actual rate of earnings fell by more than 50% under favorable conditions of subsequent employment. This evidence came in the form of an uncontradicted comparison of wage scales for claimant's pre-injury and post-injury employments as of April, 1974. We therefore hold as a matter of law that the evidence does not support a disability rating of less than 50%.

The trial court relied on Olson v. Manion's Inc. (1973), 162 Mont. 197, 510 P.2d 6 to support a method of calculating weekly benefits by which the benefits would progressively decrease as inflation raised the wage of the claimant in his subsequent employment. This method is a misapplication of the law in Olson and directly contradicts later holdings of

this Court that pre-injury and post-injury wages must be compared for the same period of time.

> "Unreliability of post injury earnings may be due to a number of variables:
>
> "1. Increase in general wage levels since the accident.
>
> "2. Claimant's own maturity or training.
>
> "3. Longer hours worked by the claimant after the accident.
>
> "4. Payment of wages disproportionate to capacity to work out of sympathy to claimant.
>
> "The ultimate objective of the disability test is by discounting the above variables to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury." Fermo v. Superline Products (1978), 175 Mont. 345, 349, 574 P.2d 251, 253 (emphasis added); see also Walker v. H.F. Johnson, Inc. (1978), 180 Mont. 405, 412, 591 P.2d 181, 185.

The special concurrence in the first appeal of this matter pointed out, "it would be patently unfair to compare wages in 1974 with wages in 1971." McDanold at 634 P.2d 181. Yet this is precisely what the Compensation Court did. The weekly benefit under the statute then applicable, 92-703 R.C.M. 1947, was 65% of the difference in earning capacity subject to a maximum of $55.00. In this case claimant is entitled to the maximum $55.00 times 180 weeks.

Claimant's total entitlement is as follows:

Temporary Total Disability

| | |
|---|---|
| June 24, 1971 - Dec. 22, 1971 | |
| 26 weeks x $65.00 | $ 1,690.00 |
| | |
| Dec. 23, 1971 - Aug. 20, 1972 | |
| 34 weeks x $60.00 | $ 2,040.00 |
| | |
| Aug. 21, 1972 - April 19, 1973 | |
| 33 1/7 weeks x $55.00 | $ 1,822.70 |

Permanent Partial Disability

    180 weeks x $55.00                $ 9,900.00

    Total                         $15,452.70

    The case is remanded to the Workers' Compensation Court with directions to enter judgment in accordance with this opinion and to award reasonable costs and attorneys' fees.

                                          Justice

We concur:

Chief Justice

Justices