No. 83-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

KERRY K. HAFER,

      Claimant and Appellant,

  -vs-

ANACONDA ALUMINUM COMPANY, Employer,

  and

ANACONDA ALUMINUM CO.,

      Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Terry N. Trieweiler argued, Whitefish, Montana

    For Respondent:

        Andrew J. Utick argued, Helena, Montana

---

          Submitted:    May 1, 1984

            Decided:    July 26, 1984

Filed: JUL 2 1984

*Ethel M. Harrison*

---
                Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from the Workers' Compensation Court regarding the proper test to determine the degree of permanent partial disability.

This is the second time this case has been before this Court.

Hafer was an iron worker for the Anaconda Aluminum Company in Columbia Falls, Montana. He was involved in an industrial accident on June 17, 1977, in which he sustained a displaced fracture of his left elbow. As a result of the injury, a silastic prosthesis was implanted in his elbow on August 21, 1978. Hafer now suffers from restricted mobility of his elbow and his orthopedic surgeon has rated his permanent partial impairment as 20 percent of his left upper extremity. The manufacturer of the prosthesis disclaims its effectiveness for persons who engage in strenuous physical activity.

At the time of the trial, Hafer was still employed as an iron worker and was earning more than at the time of the accident; however, he was experiencing pain and difficulty in trying to perform his work. Hafer was twenty-four years old at the time of trial of this matter, does not have a high school degree but has earned an Associate of Applied Science degree in welding.

The court found that Hafer had suffered a 40 percent diminished earning capacity. Yet the court stated that diminished earning capacity is only one element to consider in determining the extent of Hafer's disability and concluded that he had suffered only a 30 percent permanent partial disability and based the award on that figure.

2

The sole issue for our review is the correct test for determining compensation for permanent partial disability.

Hafer contends that since the court concluded that his earning capacity had been impaired by 40 percent, his benefits should have been computed based on that factor. Instead, in addition to the 40 percent earnings impairment rating, the court made a further finding that Hafer was only 30 percent permanently partially disabled and computed the award based on that figure. Hafer contends that it is inconsistent of the court to find a 40 percent earnings impairment and yet use the 30 percent disability factor to compute the award.

There is no argument in this case as to the maximum number of weeks upon which the award is to be based (a maximum of 280) and it is agreed that the rate of compensation is $81 per week.

The Workers' Compensation Court found:

> "In determining the extent of the claimant's permanent partial disability, this Court must consider the claimant's age, education, work experience, pain and disability (i.e., impairment) and actual wage loss and future earning ability . . ."

Hafer contends that factors other than earning capacity impairment are only relevant when the court is unable to make an independent determination of the degree to which the claimant's income earning ability has been impaired. Since the primary purpose of workers' compensation is to compensate a worker for his reduced earning capabilities as a result of an industrial accident, when the impairment can be calculated the award should be based on that percentage and not on the workers' percentage of physical impairment. We agree.

3

Hafer further contends that "permanent partial disability" as defined by section 39-71-116(12), MCA, has the same meaning as impaired earning capacity.

Section 39-71-116(12), MCA, reads as follows:

> "(12) 'Permanent Partial Disability' means that condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capability less than total that exists after the injured worker is as far restored as the permanent character of the injuries will permit."

Hafer contends, therefore, based upon the above definition, that "disability" means the extent to which a worker's earning capacity is reduced.

Hafer also cites Wight v. Hughes Livestock Co., Inc. (Mont. 1983), 664 P.2d 303, 40 St.Rep. 696, a case involving contingency fee arrangements for workers' compensation attorneys, for a lucid statement of the purpose of workers' compensation. Wight states:

> "It should be beyond cavil, therefore, that the fundamental basis of workers' compensation laws is to accommodate the public interest in placing economic loss caused by employment accidents not upon the public, but upon the industry in which the accident occurred, Williams v. Industrial Accident Board (1939), 109 Mont. 235, 97 P.2d 1115; and that the principal aim of workers' compensation coverage is to provide social insurance which protects the injured workman against disability from a work-connected injury, again placing the cost of the injury on the industry employing him. Mahlum v. Broeder (1966), 147 Mont. 386, 412 P.2d 572."

Obviously, the purpose of workers' compensation is to protect the worker against economic loss. Therefore, any disability rating which does not achieve this goal must be set aside and a figure representing potential economic loss must be substituted.

Hafer cites Osborne v. Johnson, a Kentucky case, (Ky. 1968), 432 S.W.2d 800, to support his argument that potential economic loss should be the basis of a workers' compensation award rather than a physical impairment rating. The Kentucky court relied heavily on Larson's Workmen's Compensation, a recognized authority in the field.

The Kentucky court stated:

> "If occupational disability is the basis for compensation, and if, as seems clear, it means impairment of earning capacity, it would seem that all that need be determined in a compensation case, as concerns disability, is: to what extent has the injured workman's earning capacity been impaired? And it would seem that this would involve only these determinations: (1) what kind of work normally available on the local labor market was the man capable, by qualifications and training, of performing prior to injury; (2) what were the normal wages in such employment; (3) what kind of work normally available on the local labor market is the man capable of performing since his injury; and (4) what are the normal wages in such employment? Larson says:

> "'. . . the proper balancing of the medical and the wage loss factors is . . . the essence of the "disability" problem in workers compensation. (Larson's Workmen's Compensation, Vol. 2, Sec. 57.10.)

> "'Degree of disability is calculated under most acts by comparing actual earnings before the injury with earnings capacity after the injury.

> "'. . .

> "'The ultimate objective of the disability test is, by discounting . . . variables, to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant's age and state of training as of exactly the same period used for calculating actual wages earned before the injury. Only by the elimination of all variables except the injury itself can a reasonably accurate estimate be made of the impairment of

earning capacity to be attributed to that injury.' (Larson's Workmen's Compensation, Vol. 2, Sec. 57.21.)

"Under the foregoing concept medical percentages are not determinative. The real question is: How much less money can the injured workman command in the local labor market? The doctors' testimony should be addressed to the question of what job requirements the injured man is physically capable of performing (taking into consideration his qualifications and training). The Board's determination of the extent to which the man's earning capacity is impaired then should be made on the basis of evidence as to the existence, in the local area or region, of regular employment opportunities for the type of work the medical testimony shows the man is capable of performing, and the prevailing wage rates in such employment.

"If the Board finds that the workman is so physically impaired that he is not capable of performing any kind of work of regular employment, or if the Board finds that regular employment in the kind of work the man can perform is not available on the local labor market, the man will be considered to be totally disabled. Otherwise, he will be considered to be only partially disabled. And the percentage of his partial disability will be determined by the ratio of the prevailing wage rates in the kind of employment available to him, to the wage rates earnable by him before being injured." (Emphasis added.) 432 S.W.2d at 803.

Hafer concludes by arguing that "permanent partial disability" is the degree to which his earning capacity has permanently been reduced. To hold otherwise would be contrary to the purpose for which workers' compensation legislation was enacted.

Anaconda argues that the Workers' Compensation Court did not reaffirm its previous finding that Hafer's earning capacity was reduced by 40 percent, but rather modified that original finding.

6

The original findings and conclusions, entered July 2, 1980, are as follows:

"Findings of Fact.

"20. Claimant has not demonstrated that he has suffered any actual wage loss since he returned to work in October 1978. He has proven that his earning capacity in the future may be diminished as a consequence of his injury. Based upon the medical impairment rating, the testimony of Norm Johnson as to the job market in Flathead County for a person with claimant's aptitudes and disability, and the testimony of Robert Redinger as to the defendant's employment policies and pay scales for entry-level clerical workers, it is found that claimant's earning capacity has been diminished by forty percent as a conqequence of his injury."

"Conclusions of Law.

"5. Even though his actual earnings have not been diminished since his return to work, his ability to compete in the open labor market has been impaired by a factor of 40 percent, i.e., if he had to find another job, it would probably pay 60% of what he could earn before he injured his elbow. Finding of fact no. 20, supra, Fermo v. Superline Products, 574 P.2d 251, 253 (1978)."

On July 1, 1983, following remand by this Court, Conclusion #5, above, was amended to read as follows:

"5. The claimant's earning capacity would be reduced by 40 percent if he had to quit work as an ironworker and begin work at an entry level position with the Anaconda Aluminum Co."

The court's reason for modifying the original conclusion is as follows:

"This Court's Hearing Examiner found and concluded that the claimant's earning capacity was 40 percent diminished as a result of his industrial injury. Finding of Fact No. 20 and Conclusion of Law No. 5. The facts on which the Hearing Examiner relied in reaching this conclusion and finding make it clear that he based each on the testimony regarding what the claimant earned at Anaconda at the time

7

of the hearing and what he would earn at Anaconda in an entry-level clerical position. Implicit in this testimony is the assumption that this wage contour between the wages of an ironworker and the wages of a clerical worker would remain constant, i.e, that the clerical workers would continue to earn 40% less in wages than an ironworker. Given the limited scope of and assumption in the testimony supporting the above finding and conclusion as well as the other elements comprising disability, this Court cannot find that the claimant's 40 percent diminished earning capacity is synonymous with a 40 percent work-related disability.

"The claimant was born on September 23, 1955, and is now twenty-seven years old. He does not have a high school diploma, but he does have an associate of applied science degree in welding. He has worked as a manual laborer, a welder and an ironworker. The claimant experiences pain in his left arm when he must use it strenuously at work. Additionally, the claimant has a 20 percent permanent impairment of his left upper extremity at the shoulder that prevents him from completely extending his left arm. His disability has not resulted in an actual loss of wages, but if he had to seek work in a different vocational area, he would initially earn less, unless vocationally retrained, than he could earn as an ironworker. There does not now appear to be a likelihood that the claimant will have to quit work because of his work-related disability.

"Considering all the factors the Flake Court stated were determinative of disability, this Court concludes the claimant is 30 percent permanently partially disabled as a result of his industrial accident."

Anaconda contends that this modification was made to reflect the limitations of the testimony and the unlikelihood that Hafer would ever sustain any loss of earnings as a result of his injury.

In essence, Anaconda contends that Hafer's potential losses are too speculative at this time and that the court was correct in considering various factors other than the

earning capacity reduction in arriving at the 30 percent disability factor.

We find Hafer's argument persuasive. Factors other than earning capacity impairment are only relevant when the court is unable to make an independent determination of the degree to which the claimant's earning capacity has been impaired. As we stated in Wight, supra, the principal aim of workers' compensation coverage is to provide protection for the injured worker. If the court can determine, as it has here, that a claimant's earning capacity has been impaired to a certain degree, then that figure is the bottom line and other variables need not be considered. McDanold v. B.N. Transport (Mont. 1984), 679 P.2d 1188, 41 St.Rep. 472. Since the court has determined that Hafer's earning capacity has been reduced by 40 percent that is the figure to be used in computing his benefits.

According to this Court's holding in McDanold v. B.N. Transport, supra, the proper calculation of Hafer's benefit is as follows:

$81 x 280 weeks = $22,680

Both the $81 weekly benefit and the 280 week maximum have been ruled on or stipulated to previously. The disability factor, in this case 40 percent, is only to be used to calculate the proper weekly benefit and will no longer be used to additionally reduce or limit the number of weeks for which the benefit is payable.

The order of the Workers' Compensation Court is vacated and the cause remanded to that court for entry of judgment in conformity with this opinion.

_____
Chief Justice

9

We concur:

_John Conway Harrison_

_[signature]_

_[signature]_

_J. C. [signature]_

_John C. Sheehy_

_Daniel J. Shea_
Justices

10