No. 87-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

ELAINE A. SEDLACK,

             Claimant and Appellant,

      -vs-

BIGFORK CONVALESCENT CENTER,
             Employer,
      and
CHURCH MUTUAL INSURANCE,

             Defendant and Respondent.

_____

APPEAL FROM:   The Workers' Compensation Court, The Honorable
               Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

             Trieweiler Law Firm; Terry N. Trieweiler argued,
             Whitefish, Montana

      For Respondent:

             Keller, Reynolds, Drake, Sternhagen & Johnson; G.
             Curtis Drake argued, Helena, Montana

_____

                    Submitted:   November 30, 1987

                     Decided:   February 10, 1988

Filed:   FEB 1 0 1988

                    _Ethel M. Harrison_
             _____
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinon of the Court.

Elaine Sedlack, a registered nurse, appeals the Workers' Compensation Court's judgment denying her permanent partial disability benefits under § 39-71-703, MCA (1983).[1] We reverse the judgment and remand the matter to the Workers' Compensation Court.

Sedlack worked four days per week at the Bigfork Convalescent Center in January, 1983; she chose not to work a full five-day work week. On January 14, 1983 she injured her back when she jumped away from a patient who tried to kick her. She saw a doctor about the injury and was told to rest her back. She got one week's worth of bedrest before returning to work at the convalescent center. She earned $8.05 per hour at the time she was injured. She continued to work at the convalescent center until January 1984, when she resigned so she could accept a job with the Flathead County Health Department as a nurse who visits homebound patients. In May, 1986, she earned $8.50 per hour in the new job and she would have liked to work a five-day work week because of the number of cases.

Dr. George Ingham, an orthopedic surgeon, is treating her for her back injury, which he initially thought was an early onset of sciatica. When Sedlack's back pain flared in

---

[1]  The cited section was amended by the 1987 Legislature. It now makes an award of permanent partial disability "66 2/3% of the difference between the worker's actual wages received at the time of the injury and the wages the worker is qualified to earn in the worker's job pool, subject to a maximum compensation rate of one-half the state's average weekly rate at the time of the injury."

September, 1985, he ordered her to rest up. She did not work from September 23, 1985 to October 8, 1985, during which time the respondents paid temporary total disability benefits. Dr. Ingham advised Sedlack after this spell that she should not work more than four days per week. On March 13, 1986, Sedlack filed for permanent partial disability benefits of $102.78 per week for 500 weeks under § 39-71-703, MCA. The parties later agreed that $110.72 per week was the proper disability rate. Dr. James Burton, also an orthopedic surgeon, examined Sedlack for the respondents. He testified via deposition that he believes Sedlack is suffering nerve damage from a slipped disk. Dr. Ingham testified by deposition that he believes the problem is degenerative disk disease compounded by the injury. Neither doctor submitted an impairment rating.

Norm Johnson, a Job Service counselor, also testified via deposition on behalf of Sedlack. He said the injury has reduced the percentage of jobs she could compete for in Flathead County from 53 percent to 17 percent, a 68 percent reduction. He conceded, however, that he did not foresee that Sedlack would have to settle for a job paying less than her current situation.

On May 21, 1986 a hearings officer heard testimony in the case. He subsequently filed "findings of facts and conclusions of law" that the Workers' Compensation Court adopted on March 6, 1987. However, the hearings officer did not make findings of fact, he only recited the testimony that had been presented. Thus, we have at least three possible "findings" as to the nature of the injury:

> 11. Dr. Ingham's initial impression was that the claimant had early sciatica.
>
> . . .

3

> 17. Dr. James R. Burton . . . told her he thought she had a slipped disk that was pressing on the ligaments causing them to go into spasm and affecting the nerves . . .
>
> 18. Her treating physician, Dr. Ingham, diagnosed her condition as being a combination of degenerative disk disease and the industrial injury. . .

But we do not have an indication that one of these is to be accepted to the exclusion of the other two. Although it is vital that findings of fact be based on the evidence presented, it is equally crucial that the findings be consistent and support the same conclusions of law. Rules 52(a), 53(e), M.R.Civ.P. These recitals of testimony fail that requirement.

In the conclusions of law, the hearings officer stated:

> The claimant did establish that she suffered an injury arising and occurring in the course of her employment with the Bigfork Convalescent Center. The claim was accepted as compensable by the defendant Church Mutual Insurance Company who paid temporary total disability benefits from September 23, 1985 through October 8, 1985. There is no dispute that the claimant is as far restored as the permanent character of her injuries will permit. However, she has not proven by a preponderance of the credible evidence that she has an actual loss of earnings to support an award of permanent partial disability benefits under Section 39-71-703, MCA. No evidence was presented as to the wage being paid the position she held with the Bigfork Convalescent Center as found necessary in McDanold v. B.N. Transport, Inc., Mont. ___, 679 P.2d 1188 (1984).
>
> The trial in this case was held approximately one month prior to the Montana Supreme Court decision of Dunn v.

4

> Champion International Corporation, 43
> St.Rep. 1124 (1986) which held that a
> claimant in similar circumstances was not
> entitled to permanent partial disability
> benefits as an actual loss of earnings
> when in fact she was able to earn as much
> or more than she was earning at the time
> of the injury. (Emphasis added.)

Thus, the Workers' Compensation Court entered judgment denying Sedlack permanent partial disability benefits on March 6, 1987.

Sedlack presents two issues on appeal: Does § 39-71-703, MCA, require her to prove an actual wage loss or only a reduction in her earning capacity? Is there substantial evidence to support the Workers' Compensation Court's conclusion that she had sustained no permanent partial disability when she had proven she was capable of working five days a week before the injury, but restricted to four days of work each week after the injury?

The respondents, in turn, argue that the judgment should be affirmed since there was sufficient credible evidence to support the Workers' Compensation Court's conclusion that Sedlack had not suffered a wage loss. Resolution of Sedlack's first issue is dispositive of this case.

Section 39-71-703(1), MCA, as it read before its amendment in 1987, controls since Sedlack's injury occurred in 1983. See, Buckman v. Montana Deaconess Hospital (Mont. 1986), 730 P.2d 380, 382, 43 St.Rep. 2216, 2218. That section provided:

> (1) Weekly compensation benefits for
> injury producing partial disability shall
> be 66 2/3% of the actual diminution in
> the worker's earning capacity measured in
> dollars, subject to a maximum weekly
> compensation of one-half the state's
> average weekly wage . . . (Emphasis
> added.)

This Court defined impairment of earning capacity in a personal injury context as "the permanent diminution of the ability to earn money in the future." Thomas v. Whiteside (1966), 148 Mont. 394, 397, 421 P.2d 449, 451. Earning capacity is not determined by comparing pre-injury wages with post-injury wages; it includes factors of age, occupation, skills and education, previous health, number of productive years remaining, and degree of physical or mental impairment. Thomas, 421 P.2d at 451.

The correct test for loss of earning capacity, cited time and again, is whether the industrial accident has caused "a loss of ability to earn in the open labor market." Shaffer v. Midland Empire Packing Co. (1953), 127 Mont. 211, 213-14, 259 P.2d 340, 342; Fermo v. Superline Products (1978), 175 Mont. 345, 348, 574 P.2d 251, 253; Hafer v. Anaconda Aluminum Co. (1982), 198 Mont. 105, 109-10, 643 P.2d 1192, 1195, aff'd on remand 684 P.2d 1114, 41 St.Rep. 1403; Dunn v. Champion International Corp. (Mont. 1986), 720 P.2d 1186, 1189, 43 St.Rep. 1124, 1128. Under this test, even the injured worker who earns more after his injury is eligible for permanent partial disability if certain conditions are met. Fermo, 574 P.2d at 254; Hafer, 643 P.2d at 1195-96.

In Fermo, we noted that while claimant was earning more money after his injury, he also was suffering great pain that detracted from the speed and efficiency of his work. Claimant in that case worked as a loader of trucks and had suffered an injury to his wrist. He was further hindered because he was forced to compete against younger and healthier persons for the available work. Fermo, 574 P.2d at 253. We affirmed an award of compensation under 92-703.1, RCM (1947), (later § 39-71-703(1), MCA) since there had been a loss of capacity to perform his work and a loss of the ability to compete in the open labor market.

Respondents in the case at bar contend that because Sedlack was earning as much, if not more, after the accident, there was no credible evidence of lost earning capacity thus restricting her to indemnity benefits found in §§ 39-71-705 through 39-71-708, MCA.[2] They argue that § 39-71-703, MCA, was intended to compensate the injured worker for actual, present loss of earning capacity, while § 39-71-705, MCA, was intended to compensate injured workers for possible future loss to their earning capacity. The respondents misunderstand the statutes and this Court's decisions concerning them.

In McDanold v. B.N. Transport, Inc. (Mont. 1984), 679 P.2d 1188, 41 St.Rep. 472, a truck driver suffered an ankle injury that prevented his return to work as a truck driver so he took a job at a liquor store. We held in that case that the claim could be filed under either § 39-71-703, MCA, or § 39-71-705, MCA. McDanold, 679 P.2d at 1191, aff'd 701 P.2d 1001, 42 St.Rep. 940. Such a claim under § 39-71-703, MCA, is proper so long as the compensation is proportional to the actual diminution of earning capacity. McDanold, 679 P.2d at 1191. Similarly, in Hafer, we held that an ironworker who earned $7 an hour at the time he injured his elbow but $10 an hour when he filed his claim qualified for benefits under § 39-71-703, MCA. Hafer, 643 P.2d at 1196. The claimant's work was hampered by an elbow prosthesis, making him less efficient. This loss of efficiency in the claimant's work would decrease his chance of finding employment in the open labor market, according to his employment expert. We held

---

2 Although this appeal deals with the statutes as they existed before July, 1987, it should be noted that §§ 39-71-705, -706, and -707, MCA, have been repealed.

that a diminished chance to gain employment translates into a reduced earning capacity and is sufficient for benefits under § 39-71-703, MCA. Hafer, 643 P.2d at 1195-96.

The decision in Dunn, cited by the hearings officer as authority for his conclusion that one must prove a reduction in earnings, does not change substantially either Hafer or McDanold and so is misconstrued by the Workers' Compensation Court. Dunn specifically acknowledges that a worker may receive permanent partial disability benefits despite an increase in pay:

> As can be seen from the recent case of Hafer v. Anaconda Aluminum Co. (Mont. 1984), 684 P.2d 1114, 41 St.Rep. 1403, it is possible under this test for a worker to earn more after his injury and still collect disability benefits for loss of earning capacity. In Hafer, the claimant earned more after his injury than before and yet we found that he had suffered a 40% loss of earning capacity. (Emphasis supplied.)

Dunn, 720 P.2d at 1190.

Dunn is a case in which an injured millworker returned to work after surgery on her injured knees. She earned $8.38 per hour when she injured her knees in May, 1980. She earned over $10 per hour at a different job in the mill in 1984. We reversed an award of benefits under § 39-71-703, MCA, because we concluded that the entirety of the evidence did not sustain the Workers' Compensation Court's determination that Dunn's injury reduced her ability to compete in the labor pool for jobs. The claimant testified that she felt pain, but could bear it; her doctor had not restricted her work activity. Her employment expert testified that she probably would face a pay cut of up to one-half if she left the mill, but did not allow for her ability to earn in the mill at any of seven jobs she was trained for. We held that the

employment expert's refusal to consider her possible earnings at the mill showed that he had not analyzed her ability to earn in the entire, open labor market. Dunn, 720 P.2d at 1190. Therefore, we reversed. Dunn, 720 P.2d at 1191.

Elaine Sedlack has suffered a diminution of her earning capacity, as defined by Thomas and Shaffer. Although she may earn more after the injury than before, the recent cases of Hafer, McDanold, and Dunn are consistent in saying that factor alone does not disqualify her for benefits under § 39-71-703, MCA, (1983). When coupled with her severe back pain, her attending doctor's recommendation that she work no more than four days in any given week, and the employment expert's statement that she now qualifies for only 17 percent of the jobs in the area, it is axiomatic that she has forfeited not only a portion of her ability to earn in her current situation but also her ability to find work in the open labor market as a whole. Section 39-71-104, MCA (1983) provided for a liberal interpretation of the Workers' Compensation Act. Therefore, we reverse and remand this case for more specific findings of fact, appropriate conclusions of law, and a judgment in keeping with this opinion. Furthermore, § 39-71-611, MCA (1983), provides that the Workers' Compensation Court make an award of reasonable attorney's fees to Sedlack upon a determination that her injuries are compensable.

_____
Justice

We concur:

_____
Chief Justice

9

_____

_____

_____

_____
Justices




Mr. Justice L. C. Gulbrandson, dissenting.

    I respectfully dissent for the reason that the Workers' Compensation Court, in my opinion, had before it substantial, credible evidence to support its conclusion that appellant suffered no permanent partial disability under § 39-71-703, MCA.

_____
Justice

10